```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4
      UNITED STATES OF AMERICA,      )   CR-15-00065-BLF
 5                                   )
                    PLAINTIFF,       )   SAN JOSE, CALIFORNIA
 6                                   )
              VS.                    )   MAY 9, 2018
 7                                   )
      LIN, ET AL,                    )   VOLUME 4
 8                                   )
                    DEFENDANT.       )   PAGES 636-695
 9                                   )
      _____)
10

11                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE BETH LABSON FREEMAN
12                   UNITED STATES DISTRICT JUDGE

13
                       A P P E A R A N C E S
14

15      FOR THE PLAINTIFF:      BY:  MICHAEL G. PITMAN
                                UNITED STATES ATTORNEY'S OFFICE
16                              150 ALMADEN BLVD., SUITE 900
                                SAN JOSE, CA 95113
17

18

19      FOR THE DEFENDANT:      BY:  RANDY SUE POLLOCK
        LIN                     ATTORNEY AT LAW
20                              286 SANTA CLARA AVENUE
                                OAKLAND, CA 94610
21

22            APPEARANCES CONTINUED ON NEXT PAGE

23      OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                                      CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
1          A P P E A R A N C E S  (CONTINUED)

2     FOR THE PLAINTIFF:      BY:  CHRISTOPHER MAGNANI
                              U.S. DEPARTMENT OF JUSTICE
3                             TAX DIVISION
                              BEN FRANKLIN STATION
4                             PO BOX 972
                              WASHINGTON, DC 20044
5

6     FOR THE DEFENDANT:      BY:  CHRISTOPHER J. CANNON
      HORNG                   SUGARMAN & CANNON
7                             737 TEHAMA STREET, UNIT #3
                              SAN FRANCISCO, CA 94103
8

9     INTERPRETERS:           SHAN TSAN
                              CHEN-HAO HSU
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

638

1                    INDEX OF PROCEEDINGS

2

3         PLAINTIFF'S

4         **DEIRDRE GARRISON**
          DIRECT EXAM BY MR. PITMAN                    P. 640
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

639

1                        INDEX OF EXHIBITS

2                                   IDENT.      EVIDENCE

3          PLAINTIFF'S

4          660-671                              P. 662

5          227                                  P. 682

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                           MAY 9, 2018 |
| | 2 | P R O C E E D I N G S |
| | 3 | (COURT CONVENED AT 3:25 P.M.) |
| 03:35:27 | 4 | MR. PITMAN:  YOUR HONOR, WE WOULD LIKE TO RECALL |
| 03:35:28 | 5 | MS. GARRISON. |
| 03:35:29 | 6 | THE COURT:  OKAY. |
| 03:35:58 | 7 | THE COURT:  MS. GARRISON, WELCOME BACK. |
| 03:36:00 | 8 | WHY DON'T YOU COME BACK UP HERE TO THE WITNESS STAND.  AND |
| 03:36:14 | 9 | I'M GOING TO HAVE YOU SWORN AGAIN FOR A NEW COURT DAY. |
| 03:36:21 | 10 | (**PLAINTIFF'S WITNESS, DEIRDRE GARRISON, WAS SWORN.**) |
| 03:36:23 | 11 | THE WITNESS:  YES. |
| 03:36:32 | 12 | THE CLERK:  THANK YOU. |
| 03:36:38 | 13 | **DIRECT EXAMINATION** |
| 03:36:39 | 14 | BY MR. PITMAN: |
| 03:36:40 | 15 | Q.   WELCOME BACK, MS. GARRISON. |
| 03:36:42 | 16 | A.   THANK YOU, MR. PITMAN. |
| 03:36:43 | 17 | Q.   I WOULD LIKE TO TALK TO YOU ABOUT SOME BANK RECORDS. |
| 03:36:47 | 18 | CAN WE PULL UP EXHIBIT 229, PLEASE. |
| 03:36:50 | 19 | A.   YES.  LET ME GET MY GLASSES. |
| 03:37:03 | 20 | Q.   SORRY, BUT I -- HOLD ON.  229.  OKAY. |
| 03:37:35 | 21 | OKAY.  SO WE WERE SPEAKING YESTERDAY, WE WERE TALKING A |
| 03:37:39 | 22 | LITTLE BIT ABOUT THE WORK YOU DID ON THE AUDIT, THE DEFENDANT'S |
| 03:37:44 | 23 | TAX RETURNS. |
| 03:37:45 | 24 | A.   YES. |
| 03:37:45 | 25 | Q.   AND WE TALKED A LITTLE BIT ABOUT COMMUNICATIONS YOU HAD |

DIRECT EXAMINATION BY MR. PITMAN

03:37:50  1   WITH MS. SHI.  WITH YOU JUST REMIND THE JURY, PLEASE, WHO

03:37:54  2   MS. SHI IS.

03:37:55  3   A.   MS. SHI WAS HIRED TO REPRESENT THE DEFENDANTS FOR THE

03:38:02  4   AUDIT.

03:38:02  5   Q.   OKAY.  AND SO AS PART OF THAT, I BELIEVE YOU TESTIFIED

03:38:08  6   YESTERDAY, AND PLEASE CORRECT ME IF I'M WRONG, BUT YOU ASKED

03:38:10  7   MS. SHI SOME QUESTIONS ABOUT THE DEFENDANT'S BANK ACCOUNTS, AND

03:38:13  8   THAT CONVERSATION RESULTED IN THIS EXHIBIT THAT WE ARE LOOKING

03:38:17  9   AT HERE, 229?

03:38:18  10  A.   YES.

03:38:19  11  Q.   OKAY.  SO IF YOU LOOK TOWARDS THE BOTTOM THERE, THERE ARE

03:38:25  12  TWO BANK ACCOUNTS LISTED FROM A BANK CALLED METRO UNITED; DO

03:38:30  13  YOU SEE THAT?

03:38:32  14  A.   YES.

03:38:35  15  Q.   OKAY.  AND DID YOU ISSUE SUMMONSES TO METRO UNITED

03:38:41  16  REQUESTING BANK RECORDS?

03:38:43  17  A.   YES, I DID.

03:38:44  18  Q.   OKAY.  AND DID METRO UNITED SEND DOCUMENTS BACK TO YOU IN

03:38:56  19  RESPONSE TO THAT SUMMONS?

03:38:57  20  A.   YES.

03:38:57  21  Q.   OKAY.  SO THERE ARE SIX ACCOUNTS AT METRO UNITED THAT I'M

03:39:03  22  INTERESTED IN.

03:39:04  23  A.   OKAY.

03:39:05  24  Q.   AND I'M GOING TO ASK YOU WHETHER YOU'RE CONFIDENT THAT YOU

03:39:08  25  RECEIVED RECORDS FROM METRO UNITED ABOUT THESE SIX ACCOUNTS.

DIRECT EXAMINATION BY MR. PITMAN                           642

03:39:14  1        A.   OKAY.

03:39:14  2        Q.   OKAY.  AND THE ACCOUNTS ARE 0912, AND JUST FOR THE JURY,

03:39:19  3    I'M JUST GIVING THE LAST FOUR NUMBERS OF THE BANK ACCOUNT.

03:39:25  4    0912, 7111, 7112, 9102, 9103, AND 9903.  OKAY.

03:39:40  5        SO THOSE ARE THE SIX METRO UNITED ACCOUNTS I'M INTERESTED

03:39:45  6    IN, AND I'M WONDERING IF YOU CAN TELL THE JURY WHETHER YOU'RE

03:39:49  7    CONFIDENT YOU RECEIVED RECORDS FOR THOSE ACCOUNTS FROM THE BANK

03:39:52  8    IN RESPONSE TO YOUR SUMMONS.

03:39:55  9        A.   OKAY.  DO YOU HAVE AN ANALYSIS OR SOMETHING I CAN LOOK AT

03:40:03  10   JUST TO VERIFY?

03:40:04  11       Q.   YOU ARE HAVING TROUBLE REMEMBERING THOSE SPECIFIC

03:40:07  12   ACCOUNTS?

03:40:09  13       A.   I DON'T REMEMBER THE ACCOUNT NUMBERS.

03:40:18  14            MR. PITMAN:  YOUR HONOR, MAY I APPROACH THE WITNESS?

03:40:20  15            THE COURT:  YES.

03:40:31  16        (OFF-THE-RECORD DISCUSSION.)

03:40:34  17       Q.   SO I'M GOING TO ASK YOU, PLEASE, TO TAKE A LOOK AT THE

03:40:37  18   DOCUMENT THAT'S BEHIND TAB 246.  AND ARE YOU FAMILIAR WITH THAT

03:40:47  19   DOCUMENT?

03:40:48  20       A.   YES.

03:40:49  21       Q.   AND GENERALLY SPEAKING, WITHOUT GIVING ANY DETAIL, CAN YOU

03:40:53  22   JUST TELL THE JURY WHAT IT IS?

03:40:55  23       A.   IT'S SOME OF THE ACCOUNTS THAT I ANALYZED.

03:40:58  24       Q.   OKAY.  SO WOULD YOU LIKE ME TO GIVE YOU THOSE ACCOUNT

03:41:04  25   NUMBERS AGAIN?

DIRECT EXAMINATION BY MR. PITMAN

03:41:05  1    A.   PLEASE.  THESE ARE METRO UNITED ONES THAT YOU ARE

03:41:10  2    REFERRING TO ONLY?

03:41:11  3    Q.   YES, MA'AM.

03:41:18  4    A.   AND THESE ARE FOR 2007?

03:41:21  5    Q.   2007.

03:41:22  6    A.   OKAY.

03:41:23  7    Q.   SO THE FIRST ONE IS 9103.

03:41:27  8    A.   I GOT THOSE RECORDS.

03:41:29  9    Q.   AND THE NEXT ONE IS 0912.

03:41:31  10   A.   I HAVE THOSE RECORDS.

03:41:33  11   Q.   AND THE NEXT ONE IS 9102.

03:41:42  12   A.   I DON'T SEE THAT ONE IN MY ANALYSIS.

03:41:49  13   Q.   OKAY.  DO YOU KNOW WHAT A BATES NUMBER IS?

03:41:52  14   A.   I DO.

03:41:52  15   Q.   OKAY.  SO I WOULD LIKE YOU TO LOOK FOR A PAGE WITH A BATES

03:41:56  16   NUMBER ENDING IN THE NUMBER 16.

03:42:12  17   A.   OH, 9102, THERE IT IS.

03:42:14  18   Q.   OKAY.  AND THEN THE OTHER THREE ACCOUNTS ARE 7111.

03:42:22  19   A.   GOT IT.

03:42:23  20   Q.   7112.

03:42:26  21   A.   YES.

03:42:26  22   Q.   AND 9903.

03:42:27  23   A.   YES, I HAVE ALL THOSE RECORDS.

03:42:31  24   Q.   OKAY.  SO IF YOU WOULDN'T MIND PUTTING THAT AWAY.

03:42:34  25   A.   OKAY.

DIRECT EXAMINATION BY MR. PITMAN

03:42:37  1    Q.   SO HOW CAN WE BE CONFIDENT OR HOW ARE YOU CONFIDENT THAT

03:42:40  2    YOU DID RECEIVE RECORDS FOR THOSE SIX ACCOUNTS FROM THE BANK IN

03:42:45  3    RESPONSE TO YOUR SUMMONS?

03:42:47  4    A.   BECAUSE I WOULDN'T HAVE BEEN ABLE TO ANALYZE THE AMOUNTS

03:42:50  5    THAT ARE REPORTED AND THE STATEMENTS UNLESS I HAVE THE ACCOUNT

03:42:55  6    RECORDS.

03:42:56  7    Q.   SO YOU USED THE BANK RECORDS TO DO YOUR WORK?

03:42:58  8    A.   YES.

03:42:58  9    Q.   WHICH YOU'VE JUST LOOKED AT?

03:43:00  10   A.   YES.

03:43:00  11   Q.   AND YOU SEE THAT YOU WORKED ON ALL THOSE ACCOUNTS?

03:43:02  12   A.   YES, I DID.

03:43:03  13   Q.   OKAY.  WHEN YOU FINISHED WITH THE RECORDS THAT YOU

03:43:06  14   RECEIVED FROM THE BANK, DID YOU DESTROY THEM?

03:43:09  15   A.   NO.

03:43:09  16   Q.   OKAY.  WHAT DID YOU DO WITH THEM?

03:43:11  17   A.   I SAVED THEM WITH THE FILE.

03:43:13  18   Q.   OKAY.  NOW HAVE YOU HAD A CHANCE TO REVIEW, BEFORE YOUR

03:43:19  19   TESTIMONY TODAY, SOME METRO UNITED BANK RECORDS?

03:43:24  20   A.   YES.

03:43:26  21        MR. PITMAN:  YOUR HONOR, MAY I APPROACH THE WITNESS?

03:43:27  22        THE COURT:  YES.

03:43:29  23        MR. PITMAN:  THANK YOU.

03:43:30  24   Q.   SO IF YOU TURN TO TAB 660, PLEASE.

03:44:01  25   A.   UH-HUH.

DIRECT EXAMINATION BY MR. PITMAN

03:44:02  1      Q.   AND WHAT IS BEHIND OR WHAT'S BEEN MARKED AS 660, WHAT DOES

03:44:18  2      IT CONSIST OF?

03:44:19  3      A.   THAT IS THE SIGNATURE CARD FOR THIS ACCOUNT.

03:44:29  4      Q.   OKAY.  AND IF YOU LOOK AT TAB 661, PLEASE, ARE THOSE

03:44:40  5      RECORDS FOR ACCOUNT 0912?

03:44:44  6      A.   YES, THEY ARE.

03:44:45  7      Q.   AND THAT'S ONE OF THE ACCOUNTS THAT YOU ANALYZED?

03:44:47  8      A.   YES.

03:44:48  9      Q.   OKAY.  CAN YOU LOOK, PLEASE, AT THE FOLLOWING TAB, 662.

03:44:57  10     IS THAT AN ACCOUNT APPLICATION AND OPENING DOCUMENTS?

03:45:01  11     A.   YES.

03:45:02  12     Q.   AND IF YOU LOOK AT THE FOLLOWING TAB, PLEASE, 663, ARE

03:45:08  13     THOSE BANK RECORDS FOR ACCOUNT 7111?

03:45:12  14     A.   YES, THEY ARE.

03:45:13  15     Q.   AND IS THAT ONE OF THE ACCOUNTS THAT YOU ANALYZED AS PART

03:45:16  16     OF YOUR WORK?

03:45:17  17     A.   YES, IT IS.

03:45:18  18     Q.   AND IF YOU TURN, PLEASE, TO THE NEXT TAB, 664.  AND IS

03:45:25  19     THAT AN APPLICATION FOR METRO UNITED BANK ACCOUNT?

03:45:31  20     A.   YES.

03:45:32  21     Q.   AND IF YOU TURN TO THE FOLLOWING TAB, PLEASE, 665.  ARE

03:45:35  22     THOSE BANK RECORDS FOR ACCOUNT NUMBER 7112?

03:45:40  23     A.   YES, THEY ARE.

03:45:41  24     Q.   AND IS THAT ONE OF THE ACCOUNTS THAT YOU ANALYZED AS PART

03:45:43  25     OF YOUR WORK?

03:45:44   1    A.    YES.

03:45:44   2    Q.    AND IF YOU TURN TO THE FOLLOWING TAB, PLEASE, 666.  IS

03:45:52   3    THAT ANOTHER, MORE OPENING DOCUMENTS FOR METRO UNITED?

03:45:55   4    A.    YES.

03:45:56   5    Q.    AND IF YOU TURN TO THE FOLLOWING TAB, PLEASE, 667, ARE

03:46:01   6    THOSE BANK RECORDS FOR ACCOUNT NUMBER 9102?

03:46:04   7    A.    YES, THEY ARE.

03:46:05   8    Q.    AND IS THAT ONE OF THE ACCOUNTS THAT YOU ANALYZED?

03:46:09   9    A.    YES, IT IS.

03:46:09   10   Q.    AND IF YOU TURN TO THE NEXT TAB, PLEASE, 668, IS THIS A

03:46:18   11   METRO UNITED ACCOUNT DOCUMENT?

03:46:19   12   A.    YES, IT IS.

03:46:20   13   Q.    AND IF YOU TURN TO THE FOLLOWING TAB, 669, PLEASE, ARE

03:46:26   14   THOSE BANK RECORDS FOR ACCOUNT NUMBER 9103?

03:46:29   15   A.    YES, THEY ARE.

03:46:30   16   Q.    AND IS THAT ONE OF THE ACCOUNTS THAT YOU ANALYZED?

03:46:33   17   A.    YES, IT IS.

03:46:34   18   Q.    AND IF YOU TURN TO TAB NUMBER 670, PLEASE, ARE THOSE METRO

03:46:41   19   UNITED ACCOUNT DOCUMENTS?

03:46:42   20   A.    YES.

03:46:43   21   Q.    AND THE LAST TAB, 671, DOES 671 CONSIST OF BANK RECORDS

03:46:53   22   FOR ACCOUNT NUMBER 9903?

03:46:55   23   A.    YES, IT DOES.

03:46:56   24   Q.    AND IS THAT ONE OF THE ACCOUNTS THAT YOU ANALYZED AS PART

03:46:59   25   OF YOUR WORK?

03:46:59   1      A.   YES.

03:47:00   2      Q.   OKAY.  AND ARE THESE THE TYPES OF RECORDS THAT YOU

03:47:02   3   RECEIVED FROM METRO UNITED IN RESPONSE TO YOUR SUMMONS AS PART

03:47:07   4   OF YOUR WORK ON THE AUDIT?

03:47:08   5      A.   YES.

03:47:09   6      Q.   AND YOU USED THOSE RECORDS IN YOUR ANALYSIS?

03:47:11   7      A.   YES.

03:47:11   8      Q.   AND YOU DID NOT DESTROY THEM WHEN YOU FINISHED WITH THEM?

03:47:14   9      A.   NO.

03:47:15  10           MR. CANNON:  OBJECTION.  LEADING.

03:47:16  11           THE WITNESS:  NO, I DID NOT DESTROY THEM.

03:47:18  12           THE COURT:  OVERRULED.

03:47:18  13   BY MR. PITMAN:

03:47:19  14      Q.   IN FACT, DID YOU HAVE ANY REASON TO BELIEVE THESE ARE NOT

03:47:22  15   THE RECORDS YOU RECEIVED IN RESPONSE TO YOUR SUMMONS TO METRO

03:47:26  16   UNITED?

03:47:26  17      A.   I HAVE NO REASON TO BELIEVE THEY'RE NOT.

03:47:28  18      Q.   OKAY.

03:47:31  19           MR. PITMAN:  YOUR HONOR, I WOULD LIKE TO MAKE A

03:47:32  20   MOTION TO ADMIT THESE EXHIBITS INTO EVIDENCE.

03:47:39  21           THE COURT:  ANY OBJECTION?

03:47:40  22           MR. CANNON:  I OBJECT, YOUR HONOR, AND ASK TO VOIR

03:47:44  23   DIRE ON THE RECORDS.

03:47:44  24           THE COURT:  CERTAINLY, YOU MAY VOIR DIRE.

03:47:52  25   BY MR. CANNON:

03:48:00  1    Q.   GOOD AFTERNOON, AGENT GARRISON.

03:48:02  2    A.   GOOD AFTERNOON.

03:48:02  3    Q.   SO IT'S YOUR TESTIMONY THAT YOU SUMMONED THESE RECORDS,

03:48:05  4    RIGHT?

03:48:05  5    A.   YES.

03:48:05  6    Q.   AND YOU PICKED THEM UP?

03:48:08  7    A.   THEY WERE DELIVERED TO ME.

03:48:09  8    Q.   THEY WERE DELIVERED TO YOU.  AND YOU USED THEM TO PREPARE

03:48:12  9    A REPORT, RIGHT?

03:48:14  10   A.   A REPORT WAS NEVER ISSUED.

03:48:18  11   Q.   TO CONDUCT AN ANALYSIS?

03:48:19  12   A.   TO CONDUCT AN ANALYSIS.

03:48:20  13   Q.   AND IN USING THESE RECORDS TO CONDUCT YOUR ANALYSIS, YOU

03:48:26  14   USED DIFFERENT RECORDS FOR DIFFERENT PORTIONS OF THE ANALYSIS,

03:48:29  15   RIGHT?

03:48:29  16   A.   I'M SORRY, I DON'T UNDERSTAND THAT.

03:48:35  17   Q.   YOU DIDN'T KEEP THE RECORDS IN THEIR ORIGINAL FORM, DID

03:48:38  18   YOU?

03:48:39  19   A.   I DIDN'T CHANGE THEIR ORIGINAL FORM.

03:48:41  20   Q.   WELL, YOU CHANGED THEIR ORIGINAL ORDER, RIGHT?

03:48:44  21   A.   THEIR ORIGINAL ORDER?

03:48:45  22   Q.   YES.

03:48:46  23   A.   I DON'T KNOW IF I CHANGED THEIR ORIGINAL ORDER.  THEY

03:48:50  24   USUALLY COME IN THE ORDER THAT I USE THEM IN.

03:48:52  25   Q.   CORRECT.  SO WHEN THESE RECORDS CAME TO YOU, YOU PUT BATES

03:48:57  1    NUMBERS ON THEM, RIGHT?

03:48:58  2    A.   WHEN THEY CAME TO ME?

03:49:00  3    Q.   YES.

03:49:00  4    A.   NO.

03:49:02  5    Q.   WHAT DID YOU DO WITH THESE RECORDS WHEN THEY CAME TO YOU?

03:49:05  6    A.   I ANALYZED THEM, I PUT THEM IN THE SPREADSHEET AND THEN I

03:49:09  7    STORED THEM IN A LOCKED FILE CABINET.

03:49:11  8    Q.   OKAY.  SO IN THE PROCESS OF ANALYZING THE RECORDS, YOU

03:49:21  9    MOVED THE RECORDS AROUND, RIGHT?

03:49:22  10   A.   WELL I HAVE TO TURN A PAGE TO GET TO THE NEXT PAGE, SO I

03:49:25  11   SUPPOSE THAT WOULD BE MOVING AROUND.

03:49:26  12   Q.   AND SOME RECORDS WOULD BE RELEVANT TO ONE ANALYSIS AND

03:49:29  13   OTHER RECORDS WOULD BE RELEVANT TO ANOTHER ANALYSIS, RIGHT?

03:49:32  14   A.   IF YOU'RE REFERRING TO DIFFERENT ACCOUNTS, ONE SET OF

03:49:37  15   DOCUMENTS WOULD BE RELEVANT TO ANALYSIS OF THAT ACCOUNT, AND

03:49:41  16   THE OTHER SET OF RECORDS FOR ANOTHER ACCOUNT WOULD GO INTO THAT

03:49:45  17   ANALYSIS, IF THAT'S WHAT YOU MEAN.

03:49:48  18   Q.   AND SOME OF THE ANALYSIS THAT YOU PERFORMED INVOLVED

03:49:52  19   MULTIPLE ACCOUNTS, RIGHT?

03:49:53  20   A.   YES.

03:49:55  21   Q.   AND SO SOMETIMES YOU WOULD DO AN ANALYSIS WHERE YOU WOULD

03:49:58  22   TAKE RECORDS FROM ACCOUNT A AND RECORDS FROM ACCOUNT B,

03:50:02  23   CORRECT?

03:50:04  24   A.   I DON'T REALLY FOLLOW YOUR QUESTION.

03:50:06  25   Q.   OKAY.  SOMETIMES WHEN YOU WOULD GET RECORDS FROM A BANK,

DIRECT EXAMINATION BY MR. PITMAN

03:50:12  1    YOU WOULD RECEIVE THE RECORDS?

03:50:13  2    A.   YES.

03:50:13  3    Q.   YOU WOULD HAVE A COPY?

03:50:16  4    A.   YES.

03:50:16  5    Q.   AND THEN YOU WOULD MAKE A WORKING COPY OF THOSE RECORDS,

03:50:19  6    RIGHT?

03:50:20  7    A.   NO.  I DON'T MAKE A WORKING COPY OF THE RECORDS.

03:50:24  8    Q.   SO IN THIS CASE -- SO IT'S NOT YOUR PRACTICE TO PRESERVE

03:50:27  9    THE ORIGINAL RECORDS IN THE FORM THAT YOU OBTAINED THEM?

03:50:35 10    A.   WELL I DON'T CHANGE THE RECORDS.  SO THERE'S NO NEED TO

03:50:39 11    HAVE A SECOND --

03:50:42 12    Q.   WELL, AT SOME POINT BATES NUMBERS WERE PUT ON THESE

03:50:47 13    RECORDS, RIGHT?

03:50:47 14    A.   NOT WHILE I HAVE THEM.

03:50:49 15    Q.   SO DO YOU KNOW HOW THE BATES NUMBERS WERE PUT ON THE

03:50:53 16    RECORDS?

03:50:53 17    A.   I SUPPOSE THAT WOULD BE DONE FOR COURT PROCEEDINGS.

03:50:55 18    Q.   SO DO YOU KNOW WHAT HAPPENS TO THE RECORDS FROM THE TIME

03:50:59 19    THAT YOU OBTAINED THEM FROM THE BANK UNTIL THE TIME THAT

03:51:03 20    MR. PITMAN ASKED YOU ABOUT THEM NOW?

03:51:05 21    A.   THEY WERE STORED IN A LOCKED CABINET IN THE IRS OFFICE.

03:51:09 22    Q.   AND WERE THEY BATES STAMPED WHILE THEY WERE STORED IN THAT

03:51:14 23    LOCKED CABINET?

03:51:15 24    A.   NO, THEY WEREN'T BATES STAMPED.

03:51:17 25    Q.   OKAY.  SO HOW DID THE BATES STAMPING PROCESS THE FIRST

03:51:21   1    TIME?

03:51:21   2    A.   I DIDN'T DO THE BATES STAMPING PROCESS, SO I --

03:51:27   3    Q.   SINCE YOU DIDN'T DO THE BATES STAMPING PROCESS, THEY

03:51:31   4    COULDN'T HAVE BEEN STORED IN A LOCKED CABINET THE ENTIRE TIME,

03:51:34   5    RIGHT?

03:51:34   6    A.   WELL, WHAT I SAID IS WHILE I HAVE THE RECORDS AND I WAS

03:51:38   7    WORKING ON THEM, WHEN I FINISHED WITH THEM, THEY RECEIVED

03:51:42   8    RECORD STORED IN A LOCKED CABINET.

03:51:45   9         SO WHILE THEY'RE WITH ME, THEY WERE STORED IN A LOCKED

03:51:48   10   CABINET IN THEIR ORIGINAL FORM.

03:51:49   11   Q.   AND DO YOU KNOW WHAT HAPPENED WHEN THEY CAME OUT OF THE

03:51:54   12   LOCKED CABINET AND SOMEONE PUT BATES STAMPS ON THEM?

03:51:58   13   A.   I GUESS I DON'T FOLLOW WHAT YOU MEAN BY THAT QUESTION.

03:52:04   14   Q.   WELL, IF YOU WILL LOOK AT WHAT THE GOVERNMENT HAS

03:52:07   15   PROFFERED IN EVIDENCE AS EXHIBIT 661?

03:52:11   16   A.   661?

03:52:12   17   Q.   YES.

03:52:14   18   A.   ARE YOU TALKING ABOUT 661 ON THE BATES STAMP OR --

03:52:17   19   Q.   EXHIBIT, PROFFERED EXHIBIT NUMBER 661.

03:52:21   20   A.   I SEE.  OKAY.

03:52:35   21   Q.   DOES THAT HAVE TWO SEPARATE SETS OF BATES NUMBERS ON IT?

03:52:39   22   A.   IT HAS, I DON'T KNOW IF THEY ARE BOTH BATES NUMBERS, IT

03:52:44   23   HAS TWO NUMBERS ON IT, BUT I DON'T KNOW WHAT THE ONE ON THE TOP

03:52:52   24   IS.

03:52:53   25   Q.   DO YOU KNOW WHAT THE ONE ON THE BOTTOM IS?

DIRECT EXAMINATION BY MR. PITMAN                                    652

03:52:55   1     A.   IT LOOKS LIKE A BATES NUMBERS.

03:52:57   2     Q.   OKAY.  AND DID YOU PUT THOSE BATES NUMBERS ON OR DID YOU

03:53:01   3     PUT THE NUMBER 112, WHICH YOU ARE NOT SURE IS A BATES NUMBER,

03:53:06   4     OR THE NUMBER, U.S. 22928 THAT YOU SAY IS A BATES NUMBER ON

03:53:11   5     THAT DOCUMENT?

03:53:14   6     A.   I PERSONALLY DID NOT ALTER THIS DOCUMENT, NO.

03:53:16   7     Q.   AND IS THE NEXT SIDE OF THAT PAGE BATES NUMBERED 2929?

03:53:25   8     A.   YES, IT IS.

03:53:26   9     Q.   AND IS THE OTHER NUMBER 109?

03:53:31   10    A.   YES, IT IS.

03:53:33   11    Q.   DO YOU KNOW WHY ONE SET OF NUMBERS WOULD BE CONTINUOUS AND

03:53:38   12    THE OTHER WOULDN'T BE?

03:53:40   13    A.   I DON'T KNOW BECAUSE I DIDN'T DO THE NUMBERING.

03:53:42   14    Q.   OKAY.  JUST FOR EXAMPLE, IF YOU LOOK AT EXHIBIT 669, IF

03:54:06   15    YOU WOULD LOOK AT THE FIRST PAGE OF THAT, THAT HAS ONE SET OF

03:54:15   16    BATES NUMBERS, U.S. 203113?

03:54:18   17    A.   YES.

03:54:19   18    Q.   ABOVE THAT IT HAS ANOTHER SET OF BATES NUMBERS, U.S.

03:54:23   19    80254?

03:54:25   20    A.   YES.

03:54:25   21    Q.   AND THEN ABOVE THAT IT HAS YET ANOTHER SET OF NUMBERS,

03:54:30   22    00112?

03:54:32   23    A.   YES.

03:54:32   24    Q.   AND DO YOU KNOW WHO PUT ANY OF THOSE NUMBERS ON THESE

03:54:38   25    RECORDS?

| | | |
|---|---|---|
| 03:54:40 | 1 | A.   I DO NOT KNOW THE SPECIFIC PERSON WHO PUT THE STAMP ON IT. |
| 03:54:53 | 2 | Q.   SO IF YOU LOOK AT EXHIBIT 663, AND THAT HAS BATES NUMBERS |
| 03:55:10 | 3 | U.S. 80561, CORRECT? |
| 03:55:13 | 4 | A.   YES.  I WAS USING THE LOWER NUMBER AS THE BATES NUMBER. |
| 03:55:19 | 5 | Q.   OKAY.  I CAN'T SEE THE LOWER NUMBER. |
| 03:55:21 | 6 | A.   THAT'S THE U.S. 203026. |
| 03:55:24 | 7 | Q.   OKAY.  AND IS THE U.S. 203026, AND IF YOU COULD JUST GO |
| 03:55:32 | 8 | THROUGH THIS QUICKLY BECAUSE THOSE NUMBERS ARE OFF ON MINE, |
| 03:55:36 | 9 | CONSISTENT IF YOU GO FROM U.S. -- WHAT NUMBER DID YOU SAY? |
| 03:55:43 | 10 | A.   U.S. 203026. |
| 03:55:47 | 11 | Q.   AND ARE THOSE NUMBERS GENERALLY IN SERIAL ORDER UNTIL YOU |
| 03:55:53 | 12 | GET TO EXHIBIT 669 THAT I WAS JUST ASKING YOU ABOUT? |
| 03:56:42 | 13 | LET'S SEE IF I CAN SHORTCUT THIS, THE OTHER BATES NUMBERS |
| 03:56:45 | 14 | ARE OFF ON MY COPY. |
| 03:56:53 | 15 | A.   YOU WANTED ME TO GO THROUGH WHICH ONE, WAS IT 66 -- |
| 03:56:58 | 16 | Q.   UP TO 203113.  EXHIBIT 669. |
| 03:57:06 | 17 | A.   669.  OKAY. |
| 03:57:10 | 18 | Q.   ACTUALLY LET ME ASK THIS QUESTION ANOTHER WAY WHICH MIGHT |
| 03:57:14 | 19 | SAVE US ALL A LOT OF TIME AND BE EASIER TO DO. |
| 03:57:16 | 20 | A.   OKAY. |
| 03:57:17 | 21 | Q.   IF YOU LOOK AT THE NUMBERS, THE HEAVY-FONTED BATES |
| 03:57:24 | 22 | NUMBERS. |
| 03:57:24 | 23 | A.   YES. |
| 03:57:24 | 24 | Q.   DO THOSE APPEAR TO BE IN SERIAL ORDER FROM EXHIBIT 660 UP |
| 03:57:32 | 25 | TO -- WHAT WAS THE LAST EXHIBIT THAT YOU SPOKE ABOUT? |

03:57:37  1     A.   I THINK YOU MENTIONED 669.

03:57:40  2     Q.   OKAY.  669.

03:58:26  3     A.   YES.

03:58:27  4     Q.   OKAY.  AND WHEN YOU LOOK AT THE THINNER BATES NUMBERS,

03:58:32  5     THOSE NUMBERS ARE NOT IN SERIAL ORDER, ARE THEY?

03:58:37  6     A.   I'M NOT AWARE OF WHAT THOSE NUMBERS ARE BECAUSE I DON'T DO

03:58:41  7     THE NUMBERING SYSTEM.  LET ME SEE.  I DON'T KNOW THE

03:58:48  8     SIGNIFICANCE OF THOSE NUMBERS.

03:58:50  9     Q.   CORRECT.  BUT THE LIGHTER-FONTED NUMBERS ARE NOT IN SERIAL

03:58:55  10    ORDER, ARE THEY?

03:59:00  11    A.   THESE ARE.

03:59:02  12    Q.   THEY MAY BE WITHIN INDIVIDUAL EXHIBITS, BUT FROM ONE

03:59:06  13    EXHIBIT TO THE NEXT, THERE ARE BREAKS AND JUMPS, CORRECT?

03:59:19  14    A.   THESE ARE ALL THE SAME.  OH, YOU ARE SAYING IF I GO INTO A

03:59:23  15    DIFFERENT NUMBER, IS THAT WHAT YOU WANT ME TO DO?

03:59:25  16    Q.   IF YOU GO, FOR EXAMPLE, FROM EXHIBIT 665 IT HAS A THINNER

03:59:39  17    BATES NUMBER OF 80587 TO BEGIN.  AND IT HAS A BATES NUMBER OF

03:59:46  18    203039?

03:59:47  19    A.   YOU SAID THAT WAS 666?

03:59:49  20    Q.   YES.

03:59:50  21    A.   AND WHAT NUMBER DID YOU SAY YOU HAVE?

03:59:52  22    Q.   THE THINNER BATES NUMBER -- OH, I'M SORRY.

03:59:56  23    A.   I DON'T HAVE A THINNER BATES NUMBER ON THAT PAGE.

03:59:59  24    Q.   I'M SORRY.  LET'S GO TO 665.  SO YOU HAVE A THINNER BATES

04:00:03  25    NUMBER OF U.S. 80587?

DIRECT EXAMINATION BY MR. PITMAN

| | |
|---|---|
| 04:00:12 | 1 |
| 04:00:17 | 2 |
| 04:00:18 | 3 |
| 04:00:26 | 4 |
| 04:00:31 | 5 |
| 04:00:38 | 6 |
| 04:00:39 | 7 |
| 04:00:45 | 8 |
| 04:00:50 | 9 |
| 04:00:53 | 10 |
| 04:00:54 | 11 |
| 04:00:58 | 12 |
| 04:00:59 | 13 |
| 04:00:59 | 14 |
| 04:01:05 | 15 |
| 04:01:13 | 16 |
| 04:01:15 | 17 |
| 04:01:24 | 18 |
| 04:01:28 | 19 |
| 04:01:31 | 20 |
| 04:01:32 | 21 |
| 04:01:38 | 22 |
| 04:01:41 | 23 |
| 04:01:42 | 24 |
| 04:01:44 | 25 |

1   A.   THE THINNER ONE YOU ARE SAYING, WHAT'S ABOVE, WHAT WE

2   CONSIDER THE BATES NUMBER.

3   Q.   YES.  AND YOU HAVE A THINNER BATES NUMBER OF 203039.  AND

4   THOSE NUMBERS ARE BOTH CONSISTENT THROUGHOUT THAT EXHIBIT

5   ENDING UP IN U.S. 80602, THIN BATES NUMBER, AND U.S. 203054,

6   THICK BATES NUMBER, RIGHT?

7   A.   I DON'T UNDERSTAND THAT.

8   Q.   OKAY.  IF YOU GO THROUGH EXHIBIT 665.

9   A.   OKAY.  I'M ON 665.

10   Q.   AND YOU TURN THE PAGE.

11   A.   YES, ENDING IN 039 FOR THE BATES STAMP.

12   Q.   CORRECT.

13   A.   OKAY.

14   Q.   BOTH THE THIN AND THE THICK BATES NUMBERS INCREASE BY ONE

15   DIGIT PER PAGE.

16   A.   THAT APPEARS TO BE CORRECT.

17   Q.   AND THERE ARE ALSO OTHER NUMBERS IN THE BOTTOM RIGHT THAT

18   LOOK LIKE THEY ARE ON THE PAGE OF THE DOCUMENT, THAT LOOK LIKE

19   THEY COME FROM ONE OF THOSE OLD BATES STAMPS, RIGHT?

20   A.   YES.

21   Q.   AND THOSE APPEAR TO BE ALMOST RANDOM, RIGHT?

22   A.   I DON'T KNOW ABOUT RANDOM BUT THEY ARE NOT IN ORDER.

23   Q.   OKAY.

24   A.   THEY ARE NOT IN NUMERICAL ORDER.

25   Q.   OKAY.  AND THEN IF WE GO TO EXHIBIT 666, WE HAVE A THICK

04:01:53   1    BATES NUMBER WHICH I CAN'T READ, SO IF YOU COULD JUST TELL

04:01:57   2    US --

04:01:57   3    A.   IT'S U.S. 203055.

04:02:00   4    Q.   OKAY.  AND WE HAVE NO THIN BATES NUMBERS ON THAT

04:02:05   5    DOCUMENT 666, RIGHT?

04:02:06   6    A.   THAT'S CORRECT.

04:02:06   7    Q.   OKAY.  BUT WE DO HAVE THE OTHER, IT LOOKS LIKE

04:02:13   8    HARD-STAMPED BATES NUMBERS THROUGHOUT EXHIBIT 667?

04:02:17   9    A.   I DON'T KNOW WHAT TYPE OF NUMBER THAT IS, BUT THERE IS

04:02:20  10    ANOTHER NUMBER ON IT.

04:02:21  11    Q.   OKAY.  AND ONCE AGAIN, THE KIND OF HARD-STAMPED NUMBERS

04:02:27  12    SEEM TO BE NOT IN NUMERICAL ORDER?

04:02:32  13    A.   NO.

04:02:33  14    Q.   OKAY.  AND THE LAST BATES NUMBER OF EXHIBIT 667 IS WHAT,

04:02:40  15    BECAUSE I CAN'T READ THAT LINE?

04:02:43  16    A.   THE LAST BATES NUMBER OF 667, AND YOU ARE LOOKING FOR THE

04:02:47  17    LARGE BOLD NUMBER AT THE BOTTOM?

04:02:49  18    Q.   YES.

04:02:50  19    A.   U.S. 203111.

04:02:53  20    Q.   AND ONCE AGAIN, THERE'S NO LIGHT BATES NUMBER?

04:02:57  21    A.   CORRECT.

04:02:58  22    Q.   AND SO IF WE TURN TO EXHIBIT 668, THE BOLD BATES NUMBERS

04:03:06  23    CONTINUE?

04:03:06  24    A.   CORRECT.

04:03:06  25    Q.   THERE'S NO LIGHT BATES NUMBER ON THAT PAGE?

04:03:09  1    A.   NO.

04:03:10  2    Q.   AND IF WE CONTINUE THROUGH BATES 669?

04:03:18  3    A.   YES.

04:03:19  4    Q.   THE BOLD BATES NUMBERS CONTINUE IN ORDER U.S. 203113?

04:03:25  5    A.   UH-HUH.

04:03:26  6    Q.   AND THE LIGHT BATES NUMBERS HAVE STARTED TO REAPPEAR,

04:03:31  7    RIGHT?

04:03:32  8    A.   WELL, THE SMALL ONE THAT YOU ARE REFERRING THAT STARTS

04:03:36  9    WITH U.S.

04:03:37  10   Q.   YES.

04:03:39  11   A.   YES THAT IS IN THERE, AS WELL AS WHATEVER THIS ONE IS, I

04:03:42  12   HESITATE TO CALL IT A BATES NUMBER BECAUSE I DON'T KNOW WHAT IT

04:03:44  13   IS.

04:03:44  14   Q.   OKAY.  AND THE NUMBERS THAT YOU DON'T KNOW WHAT THEY ARE,

04:03:49  15   KIND OF CONTINUE THROUGH THAT DOCUMENT?

04:03:51  16   A.   YES, THAT'S TRUE.

04:03:53  17   Q.   AS DO THE LIGHTER BATES NUMBERS?

04:03:57  18   A.   YES.

04:03:57  19   Q.   AND THE DARKER BATES NUMBERS?

04:03:59  20   A.   YES.

04:04:01  21   Q.   AND THROUGH THAT DOCUMENT, THE NUMBERS APPEAR TO

04:04:12  22   CORRELATE, CORRECT?

04:04:15  23   A.   CORRELATE WITH WHAT?

04:04:17  24   Q.   THEY EACH GO UP ONE DIGIT WITHIN THAT PARTICULAR EXHIBIT?

04:04:21  25   A.   YES.

04:04:27  1      Q.   BUT THE LIGHTER BATES NUMBERS ARE SMALLER IN NUMERICAL

04:04:50  2      VALUE THAN EARLIER EXHIBITS.

04:04:54  3           FOR EXAMPLE, IF YOU WOULD GO BACK TO EXHIBIT 663, THAT HAS

04:05:07  4      A LIGHT BATES NUMBER OF U.S. 80561, RIGHT?

04:05:12  5      A.   YES.

04:05:13  6      Q.   AND IF YOU GO TO EXHIBIT 669.

04:05:18  7      A.   YES.

04:05:19  8      Q.   THAT HAS A LIGHTER BATES NUMBER OF 80254?

04:05:24  9      A.   THAT'S CORRECT.

04:05:25  10     Q.   AND 80254 IS A LOWER NUMBER THAN 80561, RIGHT?

04:05:30  11     A.   THAT'S CORRECT.

04:05:31  12     Q.   SO IF YOU ARE BATES NUMBERING DOCUMENTS TO KEEP THEM IN

04:05:34  13     ORDER, YOU WOULD EXPECT THE LOWER BATES NUMBER TO BE AHEAD OF

04:05:37  14     THE HIGHER BATES NUMBER?

04:05:39  15     A.   THAT WOULD I GUESS DEPEND ON IF THAT'S THE BATES NUMBER WE

04:05:43  16     ARE USING, BECAUSE THE BATES NUMBERS AT THE BOTTOM THAT I REFER

04:05:47  17     TO ARE ALL IN ORDER.

04:05:48  18     Q.   CORRECT.  AND SO THE BATES NUMBERS AT THE BOTTOM THAT ARE

04:05:51  19     IN ORDER DON'T CORRELATE WITH THE U.S. NUMBERS IN THE LIGHTER

04:05:58  20     FONT, CORRECT?

04:05:59  21     A.   NO, THEY DON'T CORRELATE.  THEY ARE NOT THE SAME NUMBERS.

04:06:02  22     Q.   OKAY.  AND SO WHEN YOU LOOK AT THE DOCUMENTS THEMSELVES,

04:06:08  23     YOU CAN'T TELL WHETHER -- WHAT'S HAPPENED TO THEM SINCE THEY

04:06:13  24     CAME OUT OF THE LOCKED BOX WHERE YOU LEFT THEM, RIGHT?

04:06:17  25     A.   I CAN'T TELL WHO PUT THE STAMPS ON THEM, BUT -- SO IS THAT

DIRECT EXAMINATION BY MR. PITMAN

| | | |
|---|---|---|
| 04:06:26 | 1 | THE QUESTION?  ARE YOU ASKING ME -- |
| 04:06:28 | 2 | Q.   I'M JUST ASKING, YOU CAN'T TELL WHAT HAPPENED TO THESE |
| 04:06:32 | 3 | DOCUMENTS FROM THE TIME THAT YOU WERE DONE WITH THEM? |
| 04:06:34 | 4 | A.   WELL, ONCE I RELEASE THE DOCUMENTS, THEY ARE OUT OF MY |
| 04:06:37 | 5 | CONTROL. |
| 04:06:37 | 6 | Q.   CORRECT.  AND YOU DON'T KNOW WHAT HAPPENED TO THEM WHEN |
| 04:06:40 | 7 | THEY WERE OUT OF YOUR CONTROL? |
| 04:06:42 | 8 | A.   NO, I DON'T KNOW WHAT HAPPENED TO THEM WHEN THEY ARE OUT |
| 04:06:45 | 9 | OF MY CONTROL. |
| 04:06:46 | 10 | Q.   YOU DON'T KNOW HOW THEY WERE ARRANGED? |
| 04:06:48 | 11 | A.   I DON'T KNOW HOW THEY WERE ARRANGED. |
| 04:06:50 | 12 | Q.   YOU DON'T KNOW WHETHER THERE MIGHT BE DOCUMENTS MISSING? |
| 04:06:56 | 13 | A.   I WAS ABLE TO DO MY WORK WITH THESE, SO I DON'T THINK THAT |
| 04:07:00 | 14 | THERE WOULD BE DOCUMENTS MISSING.  I WAS ABLE TO ANALYZE THE |
| 04:07:03 | 15 | ACCOUNTS.  IF I HAD MISSING DOCUMENTS, I WROTE TO THE BANK AND |
| 04:07:08 | 16 | SPECIFIED WHAT'S MISSING. |
| 04:07:10 | 17 | Q.   CORRECT.  AND YOU WERE ABLE TO DO YOUR WORK WITH THE |
| 04:07:16 | 18 | ORIGINAL SET OF DOCUMENTS, RIGHT? |
| 04:07:17 | 19 | A.   YES. |
| 04:07:18 | 20 | Q.   AND BUT AS YOU ARE SITTING THERE, YOU CAN'T TELL THE |
| 04:07:21 | 21 | DOCUMENTS THAT THE GOVERNMENT HAS LABELED AS EXHIBITS ARE THE |
| 04:07:24 | 22 | SAME AS YOUR ORIGINAL SET OF DOCUMENTS? |
| 04:07:26 | 23 | A.   THEY APPEAR TO BE THE SAME DOCUMENTS TO ME. |
| 04:07:28 | 24 | Q.   CORRECT.  BUT YOU CAN'T TELL WHETHER THE DOCUMENTS HAVE |
| 04:07:32 | 25 | BEEN ELIMINATED OR REARRANGED OR ADDED? |

DIRECT EXAMINATION BY MR. PITMAN

| | | |
|---|---|---|
| 04:07:34 | 1 | A.   OR WHAT? |
| 04:07:36 | 2 | Q.   OR ADDED. |
| 04:07:45 | 3 | A.   WELL, I GUESS ANYTHING IS POSSIBLE.  THEY WEREN'T IN MY |
| 04:07:48 | 4 | CONTROL. |
| 04:07:49 | 5 | MR. CANNON:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR. |
| 04:07:51 | 6 | THE COURT:  ALL RIGHT. |
| 04:07:52 | 7 | MR. PITMAN, YOU HAD MOVED SOME DOCUMENTS INTO EVIDENCE. |
| 04:07:55 | 8 | MR. PITMAN:  YES.  THANK YOU, YOUR HONOR. |
| 04:07:58 | 9 | THE COURT:  AND MS. POLLACK, DID YOU HAVE ANY |
| 04:08:03 | 10 | QUESTIONS ON THESE? |
| 04:08:04 | 11 | MS. POLLACK:  NO, YOUR HONOR. |
| 04:08:05 | 12 | MR. PITMAN:  THE MOTION WAS BEGINNING AT EXHIBIT 660 |
| 04:08:11 | 13 | THROUGH 671. |
| 04:08:18 | 14 | THE COURT:  IS THERE ANY OBJECTION? |
| 04:08:20 | 15 | MR. CANNON:  YES, YOUR HONOR. |
| 04:08:21 | 16 | THESE ARE CLEARLY NOT BUSINESS RECORDS OF THE IRS, AND I |
| 04:08:25 | 17 | DON'T THINK THERE'S BEEN A FOUNDATION ESTABLISHED.  THEY ARE |
| 04:08:28 | 18 | NOT BUSINESS RECORDS, AUTHENTICATION, NO ADMISSION, HEARSAY. |
| 04:08:40 | 19 | THE COURT:  LET ME JUST DO IT AT SIDEBAR. |
| 04:08:44 | 20 | (SIDEBAR DISCUSSION ON THE RECORD.) |
| 04:08:59 | 21 | THE COURT:  SO WE'VE SPENT MOST OF THE WEEK HEARING |
| 04:09:02 | 22 | CUSTODIANS TESTIFY ABOUT OTHER RECORDS, BUT NOT THE ONES SHE |
| 04:09:05 | 23 | REVIEWED. |
| 04:09:06 | 24 | MR. PITMAN:  SO THIS IS -- I DON'T KNOW IF YOUR HONOR |
| 04:09:08 | 25 | REMEMBERS, THERE WAS A CUSTODIAN WHO APPEARED YESTERDAY WHO WAS |

DIRECT EXAMINATION BY MR. PITMAN

04:09:11  1      NOT CAPABLE OF TESTIFYING ABOUT --

04:09:14  2              THE COURT:  RIGHT.

04:09:14  3              MR. PITMAN:  SO WE ARE MOVING THESE DOCUMENTS IN

04:09:16  4      UNDER RULE 807.

04:09:18  5          WE HAVE GIVEN PREVIOUS NOTICE.  THESE DOCUMENTS HAVE BEEN

04:09:25  6      AVAILABLE FOR THE DEFENSE FOR MONTHS.  THEY'VE NEVER IDENTIFIED

04:09:28  7      ANY PROBLEM WITH THEM OTHER THAN THE BATES STAMPING, WHICH

04:09:31  8      OBVIOUSLY WAS NOT DONE BY THE BANK.

04:09:36  9          SO IT'S OUR MOTION UNDER RULE 807.  WE HAVE LAID A

04:09:39  10     SUFFICIENT -- THE DOCUMENTS ARE INHERENTLY COHERENT.  THEY

04:09:43  11     RELATE.  THEY ARE CONTIGUOUS, AND THERE'S NO DEFECT IDENTIFIED

04:09:46  12     AT ANY POINT.

04:09:48  13         BANK RECORDS ARE GENERALLY ADMISSIBLE UNDER 807 IN THE

04:09:50  14     ABSENCE OF ANY PROBLEM.  A CUSTODIAN WAS INCAPABLE.

04:09:54  15             THE COURT:  YEAH.  OKAY.

04:09:56  16             MR. CANNON:  YOUR HONOR, I THINK THE GOVERNMENT IS

04:09:57  17     OVERSTATING THE COVERAGE OF 807.

04:10:00  18         THIS WAS BRIEFED PRIOR TO TRIAL.  WE DISCUSSED THE <u>BONDS</u>

04:10:03  19     CASE, IF 807 IS AS BROAD AS THE GOVERNMENT WOULD LIKE IT TO BE,

04:10:06  20     THERE WOULD BE NO REASON FOR HEARSAY RULES, THERE WOULD BE NO

04:10:09  21     REASON FOR THE BUSINESS RECORDS RULE.

04:10:10  22         THESE ARE RECORDS THAT THE CUSTODIAN CAN'T IDENTIFY.  THIS

04:10:14  23     WITNESS DOESN'T KNOW WHAT HAPPENED TO THEM AFTERWARDS, AND WE

04:10:16  24     HAVE OBJECTED TO THESE RECORDS FROM DAY ONE.

04:10:18  25             THE COURT:  ALL RIGHT.

DIRECT EXAMINATION BY MR. PITMAN

04:10:21   1        AS TO BANK RECORDS FROM A U.S. BANK THAT I CAN OBSERVE AS

04:10:28   2    WELL, AND THE WITNESS HAS TESTIFIED IN THE WAY IN WHICH SHE

04:10:33   3    CAME INTO CONTACT WITH THEM, I AM GOING TO FIND THEY ARE

04:10:36   4    SUFFICIENTLY AUTHENTICATED UNDER 807.

04:10:39   5        THAT DIDN'T APPLY TO CHINESE RECORDS THAT ARE WRITTEN IN

04:10:41   6    CHINESE AND TO OTHER RECORDS, BUT THESE I WILL ADMIT.

04:10:54   7            THE COURT:  THE OBJECTION IS OVERRULED.  I WILL ADMIT

04:10:56   8    EACH OF THOSE EXHIBITS.

04:10:56   9        (PLAINTIFF'S EXHIBITS 660 - 671, WERE ADMITTED INTO

04:11:07  10    EVIDENCE.)

04:11:07  11            THE COURT:  MR. PITMAN, GO AHEAD.

04:11:09  12            MR. PITMAN:  THANK YOU, YOUR HONOR.

04:11:14  13                  **DIRECT EXAMINATION (CONTINUED)**

04:11:15  14    BY MR. PITMAN:

04:11:15  15    Q.   ALL RIGHT.  MS. GARRISON, WHEN WE WERE -- YESTERDAY

04:11:21  16    AFTERNOON WE WERE TALKING A LITTLE BIT ABOUT THE WORK YOU DID

04:11:27  17    ON THE AUDIT FOR THE DEFENDANT'S TAX RETURNS AND WE TALKED A

04:11:34  18    LITTLE BIT ABOUT A MEETING YOU HAD WITH BOTH OF THE TAXPAYERS

04:11:38  19    AT MS. SHI'S OFFICE; DO YOU REMEMBER THAT?

04:11:40  20    A.   I DO.

04:11:41  21    Q.   AND JUST TO REFRESH EVERYONE, I WOULD LIKE TO ASK

04:11:47  22    MR. DEVILLE TO PULL UP EXHIBIT NUMBER 221, PLEASE.

04:11:59  23        MAY WE PUBLISH, YOUR HONOR, THIS DOCUMENT IS IN EVIDENCE?

04:12:03  24            THE COURT:  OKAY.

04:12:04  25    Q.   OKAY.  SO THIS IS SORT OF WHERE WE ENDED UP YESTERDAY.

04:12:08  1    AND CAN YOU JUST REMIND THE JURY WHAT THIS DOCUMENT -- HOW YOU

04:12:12  2    GOT THIS DOCUMENT AND WHAT IT PURPORTS TO SHOW?

04:12:17  3    A.   I GOT THIS DOCUMENT FROM THE DEFENDANTS AND IT PURPORTS TO

04:12:20  4    SHOW WHAT THEIR GROSS INCOME IS FOR THE BUSINESS.  THIS IS FROM

04:12:25  5    2007.

04:12:27  6    Q.   OKAY.  AND THE -- SO AT THE VERY TOP HERE OF THIS

04:12:36  7    DOCUMENT, THERE'S -- IT SAYS REIJIN INTERNATIONAL CORPORATION.

04:12:41  8    A.   YES.

04:12:41  9    Q.   AND WHAT'S REIJIN AGAIN?

04:12:45  10   A.   WHAT IS REIJIN?

04:12:46  11   Q.   YEAH, CAN YOU JUST REMIND THE JURY.

04:12:48  12   A.   THEY EXPORT SCRAP METAL.

04:12:52  13   Q.   SO WHOSE BUSINESS IS THAT?

04:12:53  14   A.   THAT BELONGS TO THE DEFENDANTS.

04:12:55  15   Q.   OKAY.  AND THAT IS -- THE FINANCIAL DEALINGS OF THAT

04:13:01  16   ENTITY WERE SIGNIFICANT FOR THE AUDIT FOR 2006 AND 2007?

04:13:08  17   A.   YES.

04:13:08  18   Q.   AND THEN IF YOU LOOK IN THE BOTTOM LEFT-HAND CORNER THERE,

04:13:17  19   THERE'S A SEAL OR A STAMP, AND THEN DO YOU SEE SOME WRITING

04:13:18  20   UNDERNEATH THAT?

04:13:19  21   A.   I DO.

04:13:20  22   Q.   AND COULD YOU JUST READ THAT FOR THE JURY, I DON'T KNOW IF

04:13:23  23   YOUR COPY IS GOOD ENOUGH.

04:13:25  24   A.   IT IS.  IT'S TIANJIN RUIYU METAL INCORPORATED.

04:13:29  25   Q.   OKAY.  AND WHAT IS TIANJIN RUIYU METAL PRODUCTS -- I'M

04:13:36  1    SORRY, TIANJIN RUIYU METAL, INC.?

04:13:39  2    A.   THAT IS, ALLEGEDLY, THE ONLY CLIENT OF REIJIN

04:13:45  3    INTERNATIONAL.

04:13:45  4    Q.   OKAY.  SO WE WERE TALKING ABOUT THIS A LITTLE BIT

04:13:49  5    YESTERDAY.  AND CAN YOU JUST REMIND THE JURY, PLEASE, THE

04:13:51  6    RELATIONSHIP BETWEEN THOSE ENTITIES AS IT WAS DESCRIBED TO YOU

04:13:55  7    BY THE DEFENDANTS?

04:13:55  8    A.   AS IT WAS DESCRIBED TO ME, TIANJIN IS THE ONE AND ONLY

04:14:03  9    CUSTOMER OF REIJIN, AND SO THEY GET -- MONEY IS COMING IN FROM

04:14:11 10    REIJIN, AND A LOT OF OTHER PEOPLE WHO THEY SAY ARE CUSTOMERS OF

04:14:19 11    TIANJIN'S.

04:14:20 12        SO THE MONEY THAT COMES IN, IS THIS WHAT YOU WANTED, I'M

04:14:26 13    NOT SURE --

04:14:27 14    Q.   I THINK YOU MAY HAVE MISSPOKEN.

04:14:31 15        SO THE DOMESTIC COMPANY, THE DEFENDANT'S COMPANY, WHAT'S

04:14:35 16    THE NAME OF THAT COMPANY?

04:14:37 17    A.   REIJIN INTERNATIONAL.

04:14:39 18    Q.   OKAY.  AND THEIR ONLY CLIENT, WHAT IS THAT COMPANY CALLED?

04:14:42 19    A.   TIANJIN RUIYU METAL PRODUCTS.

04:14:45 20    Q.   OKAY.  AND WHAT DID THEY TELL YOU ABOUT MONEY COMING IN TO

04:14:51 21    REIJIN'S BANK ACCOUNTS?

04:14:53 22    A.   IT'S NOT THEIRS.

04:14:55 23    Q.   OKAY.  CAN YOU ELABORATE A LITTLE BIT?

04:14:58 24    A.   THEY SAID THAT THE MONEY THAT IS COMING INTO THEIR BANK

04:15:04 25    ACCOUNTS ACTUALLY BELONGS TO TIANJIN AND TIANJIN'S CUSTOMERS.

04:15:08   1      Q.   OKAY.

04:15:08   2      A.   AND SO --

04:15:11   3      Q.   GO AHEAD.

04:15:12   4      A.   SO THEY COLLECT MONEY IN ADVANCE, AND THEN THEY CHECK THE

04:15:17   5      GOLD, BUT -- NOT GOLD, BUT COPPER AND BRONZE PRICES, FOR

04:15:23   6      METALS, AND THEN THEY FIND OUT IF TIANJIN WANTS THESE PRODUCTS.

04:15:28   7      AND THEN REIJIN ORDERS THEM, BUYS THE PRODUCT, AND IT GETS

04:15:36   8      SHIPPED TO THE CUSTOMER.

04:15:39   9      Q.   OKAY.  AND DID YOU NOTICE IN YOUR WORK, ANALYZING THE BANK

04:15:45  10      RECORDS IN THIS CASE, THAT THERE WERE DEPOSITS COMING IN OR

04:15:49  11      WIRES COMING IN TO REIJIN'S ACCOUNT FROM TIANJIN?

04:15:53  12      A.   YES.

04:15:54  13      Q.   FROM THIS COMPANY, TIANJIN RUIYU?

04:15:57  14      A.   YES.

04:15:57  15      Q.   OKAY.  AND DID YOU ALSO NOTICE THAT THERE WERE DEPOSITS

04:16:01  16      COMING IN OR WIRES COMING IN TO REIJIN'S ACCOUNT FROM OTHER

04:16:05  17      INDIVIDUALS AND ENTITIES?

04:16:09  18      A.   YES.

04:16:10  19      Q.   SO THE DEFENDANTS TOLD YOU THEY ONLY HAD ONE CUSTOMER BUT

04:16:16  20      THERE WAS MONEY COMING IN FROM OTHERS?

04:16:18  21      A.   THAT'S TRUE.

04:16:18  22      Q.   AND CAN YOU JUST TELL THE JURY WHAT YOU REMEMBER,

04:16:25  23      GENERALLY SPEAKING, ABOUT THE "OTHERS" THAT WERE DEPOSITING OR

04:16:27  24      WIRING MONEY INTO REIJIN'S BANK ACCOUNT?

04:16:32  25      A.   THEY EXPLAINED TO ME THAT THAT WASN'T THEIR MONEY, THAT

04:16:35  1    THOSE CUSTOMERS WERE CUSTOMERS OF TIANJIN'S, AND THEY DIDN'T

04:16:40  2    KNOW HOW MUCH MONEY WAS GOING TO GET SENT INTO THEIR ACCOUNT OR

04:16:43  3    WHO IT WAS GOING TO COME FROM, IT WASN'T THEIRS.

04:16:48  4    Q.   SO I DON'T UNDERSTAND WHO THE OTHERS SENDING MONEY TO

04:16:55  5    THEIR ACCOUNT WERE.  WHAT WAS -- WHAT WAS THEIR PURPORTED

04:17:01  6    RELATIONSHIP WITH TIANJIN?

04:17:02  7    A.   YES.  SUPPOSEDLY, THEY WERE TIANJIN'S CUSTOMERS.

04:17:05  8    Q.   AND DID THEY OWE TIANJIN MONEY?

04:17:09  9    A.   I'M NOT SURE WHAT THEIR RELATIONSHIP WAS WITH TIANJIN, BUT

04:17:12  10   THE MONEY WAS SENT TO REIJIN.

04:17:15  11   Q.   OKAY.  AND DID THE DEFENDANTS SPECIFICALLY TELL YOU THAT

04:17:20  12   THEY DID NOT KNOW WHO THOSE OTHERS WERE?

04:17:25  13   A.   THEY HAD NO IDEA WHO THE OTHER PEOPLE SENDING IN THE MONEY

04:17:31  14   WERE OR HOW MUCH MONEY TO EXPECT OR ACCOUNT FOR.  I ASKED, HOW

04:17:42  15   DID THEY GET THE BANK ACCOUNT NUMBER THEN?  HOW DO PEOPLE JUST

04:17:46  16   DEPOSIT LOTS OF MONEY INTO YOUR ACCOUNT THAT YOU DON'T EVEN

04:17:53  17   KNOW?  IT DOESN'T HAPPEN TO ME, I WISH IT DID.

04:17:57  18      BUT THEY SAID THAT TIANJIN MUST HAVE GIVEN THEM THAT BANK

04:18:00  19   ACCOUNT NUMBER.

04:18:01  20   Q.   OKAY.  AND JUST SO WE GET A SENSE, WHEN WE SAY THESE

04:18:04  21   OTHERS, ENTITIES AND INDIVIDUALS OTHER THAN TIANJIN WIRING

04:18:07  22   MONEY TO REIJIN, CAN YOU DESCRIBE FOR THE JURY WHAT YOU

04:18:10  23   REMEMBER ABOUT THEM, HOW MANY THERE WERE, WHAT YOU KNEW ABOUT

04:18:15  24   THEM BASED ON THE RECORDS AVAILABLE TO YOU.

04:18:17  25   A.   OKAY.  WELL, THERE WERE MANY, THERE WERE PROBABLY AT LEAST

DIRECT EXAMINATION BY MR. PITMAN

04:18:22  1    15 OTHER PEOPLE SENDING MONEY IN.  THEY WERE LARGE AMOUNTS,

04:18:29  2    HUNDREDS OF THOUSANDS OF DOLLARS, AND THAT JUST SEEMED ODD TO

04:18:35  3    ME THAT YOU WOULD HAVE MONEY COMING INTO YOUR ACCOUNT FROM

04:18:38  4    PEOPLE YOU DON'T KNOW IN AMOUNTS YOU DON'T KNOW WHEN ONLY THEY

04:18:45  5    CONTROL THE BANK ACCOUNT.

04:18:47  6    Q.   DID -- DO YOU REMEMBER HAVING ANY CONVERSATION WITH THE

04:18:50  7    DEFENDANTS DURING THIS MEETING ABOUT WHO OWNED TIANJIN RUIYU

04:18:56  8    METAL PRODUCTS?

04:18:58  9    A.   I ASKED THEM IF THEY HAD ANY OWNERSHIP IN TIANJIN, AND

04:19:03  10   THEY SAID NO.  THEY SAID THEY KNEW TIANJIN BECAUSE MEILI LIN'S

04:19:12  11   FATHER WAS FRIENDS WITH ONE OF THE PARTNERS.  BUT HER FATHER

04:19:15  12   ALSO, SHE SAID, HAD NO OWNERSHIP INTEREST IN TIANJIN.

04:19:21  13   Q.   AND DO YOU REMEMBER, I KNOW IT'S BEEN A VERY LONG TIME,

04:19:25  14   DID THEY GIVE YOU A NAME FOR THAT PARTNER?

04:19:27  15   A.   MR. CHEN.

04:19:29  16   Q.   OKAY.  SO MR. CHEN WAS ONE OF THE OWNERS OF TIANJIN?

04:19:37  17   A.   YES.

04:19:37  18   Q.   OKAY.  OKAY.  SO DURING THIS MEETING, GENERALLY SPEAKING,

04:19:50  19   WAS IT THE DEFENDANT'S POSITION THAT THEIR TAX RETURNS WERE

04:19:55  20   CORRECT OR NOT?

04:19:57  21   A.   YES.

04:19:58  22        MR. CANNON:  OBJECTION, YOUR HONOR.

04:19:59  23        AMBIGUOUS AS TO WHICH DEFENDANT.

04:20:00  24        THE COURT:  LET'S BREAK IT DOWN AS TO DEFENDANT AND

04:20:03  25   YEAR.

DIRECT EXAMINATION BY MR. PITMAN

04:20:06   1          MR. PITMAN:  OKAY.

04:20:06   2     Q.   SO DID EITHER OF THE DEFENDANTS SUGGEST THAT THE TAX

04:20:12   3     RETURN THAT THEY FILED FOR 2006 WAS INCORRECT DURING THIS

04:20:19   4     MEETING?

04:20:20   5     A.   NO.

04:20:20   6     Q.   AND DID EITHER OF THE DEFENDANTS SUGGEST THAT THE TAX

04:20:25   7     RETURN THAT THEY FILED FOR 2007 WAS INCORRECT DURING THIS

04:20:30   8     MEETING?

04:20:31   9     A.   NO.

04:20:31  10     Q.   YESTERDAY WE LOOKED AT SOME RECORDS THAT HAD THE NAME

04:20:51  11     FLORENCE TRADING ON THEM; DO YOU REMEMBER THAT?

04:20:55  12     A.   I DO.

04:20:56  13     Q.   FLORENCE TRADING.

04:20:57  14     A.   YES.

04:20:58  15     Q.   AND FLORENCE TRADING, CAN YOU JUST REMIND THE JURY WHY YOU

04:21:01  16     HAD SOME QUESTIONS ABOUT FLORENCE TRADING?

04:21:03  17     A.   YES.  BECAUSE WHEN I GOT THE BANK RECORDS, LIKE I SAID, I

04:21:11  18     ASKED FOR ALL THE RECORDS, ALL THE ACCOUNTS THAT THEY HAVE

04:21:15  19     CONTROL OVER.  AND FLORENCE TRADING CAME TO ME.  I SAID, WHAT'S

04:21:23  20     THIS?  AND THEN I SAW A DEPOSIT SLIP, YOU CAN GET INTO THAT

04:21:32  21     LATER, I GUESS.

04:21:33  22     Q.   SO I GUESS MY QUESTION REALLY IS, HOW IS THAT PERTINENT --

04:21:40  23     A.   BECAUSE IT'S NOT ON THE TAX RETURN.

04:21:42  24     Q.   LET ME FINISH MY QUESTION.

04:21:44  25     A.   SORRY.

04:21:44    1    Q.   SO AS PART OF YOUR RESEARCH, YOU UNCOVERED THIS ENTITY,

04:21:49    2    AND THERE WAS SOME RELATIONSHIP BETWEEN THE ENTITY AND THE

04:21:54    3    DEFENDANTS.

04:21:55    4        SO WHY, IN TERMS OF THE AUDIT OF THEIR TAX RETURNS, WOULD

04:21:58    5    THAT CREATE QUESTIONS FOR YOU?

04:22:00    6    A.   BECAUSE I WOULD EXPECT IF THEY HAVE ANOTHER BUSINESS, IT

04:22:05    7    SHOULD BE REPORTED ON THE TAX RETURN.

04:22:06    8    Q.   AND DO YOU REMEMBER WHETHER FLORENCE TRADING WAS REPORTED

04:22:10    9    ON A SCHEDULE C FOR THE 1040 FOR 2006?

04:22:15   10    A.   IT WAS NOT.

04:22:15   11    Q.   AND DO YOU REMEMBER WHETHER FLORENCE TRADING WAS REPORTED

04:22:20   12    ON SCHEDULE C FOR 2007?

04:22:21   13    A.   IT WAS NOT.

04:22:22   14    Q.   OKAY.  SO DURING THIS MEETING WITH THE DEFENDANTS, DID YOU

04:22:27   15    ASK THEM ABOUT FLORENCE TRADING?

04:22:29   16    A.   YES, I DID.

04:22:30   17    Q.   AND DO YOU REMEMBER WHAT THEY TOLD YOU?

04:22:32   18    A.   THEY TOLD ME THAT IT WAS MEILI LIN'S FATHER'S COMPANY FROM

04:22:39   19    MANY, MANY YEARS AGO THAT HAS LONG BEEN DORMANT, THAT THEY HAVE

04:22:43   20    NOTHING TO DO WITH.

04:22:45   21        IT WAS A PAPER COMPANY, PAPER EXPORT COMPANY THAT THE

04:22:50   22    FATHER USED TO OWN MANY, MANY YEARS AGO WHEN HE LIVED ON THE

04:22:58   23    EAST COAST.

04:22:59   24    Q.   OKAY.  SO AFTER THIS MEETING WAS OVER, WERE YOU PREPARED

04:23:10   25    TO -- SORRY, LET ME START THAT QUESTION AGAIN.

DIRECT EXAMINATION BY MR. PITMAN

| | |
|---|---|
| 04:23:17 | 1 |

1          WAS THERE ANOTHER MEETING BETWEEN YOU AND ONE OF THE

2   DEFENDANTS AFTER THE ONE WE HAVE JUST BEEN TALKING ABOUT?

3   A.   YES.

4   Q.   OKAY.  SO YESTERDAY WE TALKED ABOUT AN INITIAL MEETING

5   WITH CINDY SHI ALONE?

6   A.   YES.

7   Q.   AT HER OFFICE?

8   A.   THAT WAS THE FIRST ONE.

9   Q.   THEN THE SECOND MEETING, IT WAS YOU AND CINDY SHI AND BOTH

10   OF THE DEFENDANTS?

11   A.   YES.

12   Q.   AND THAT WAS AT CINDY SHI'S OFFICE AS WELL?

13   A.   THE SECOND MEETING WAS.

14   Q.   OKAY.  AND SO THAT WAS THE ONE WE WERE JUST DISCUSSING?

15   A.   EXACTLY.

16   Q.   AND THEN DID THERE COME A TIME WHEN YOU HAD A THIRD

17   MEETING?

18   A.   YES.

19   Q.   IN CONNECTION WITH THIS AUDIT?

20   A.   YES.

21   Q.   AND CAN YOU PLEASE JUST DESCRIBE, BRIEFLY, THE

22   CIRCUMSTANCES SURROUNDING THAT THIRD MEETING.

23   A.   MS. SHI WAS CONCERNED THAT, SHE WANTED TO KNOW HOW MY

24   MANAGER FELT ABOUT HER EXPLANATION THAT THIS WASN'T THEIR

25   MONEY.

04:24:17  1    Q.   OKAY.

04:24:18  2    A.   AND SO SHE WANTED TO HAVE A MEETING WITH THE MANAGER.

04:24:22  3    Q.   OKAY.  AND SO IS IT FAIR TO SAY THAT MS. SHI REQUESTED A

04:24:26  4    MEETING WITH YOUR MANAGER?

04:24:28  5    A.   YES.

04:24:28  6    Q.   OKAY.  AND DID -- WAS THERE THEN A MEETING IN RESPONSE?

04:24:32  7    A.   THERE WAS.

04:24:33  8    Q.   AND WHERE DID THAT MEETING OCCUR?

04:24:35  9    A.   AT 450 GOLDEN GATE IN SAN FRANCISCO AT THE FEDERAL

04:24:39  10   BUILDING.

04:24:40  11   Q.   OKAY.  AND DO YOU REMEMBER WHEN THAT HAPPENED?

04:24:43  12   A.   I BELIEVE THAT WAS JANUARY, MAYBE JANUARY 13TH.

04:24:48  13   Q.   OKAY.  OF WHAT YEAR?

04:24:49  14   A.   2010.

04:24:51  15   Q.   AND WHO WAS THERE?

04:24:58  16   A.   MR. HORNG, AND I HOPE I'M PRONOUNCING THAT CORRECTLY,

04:25:05  17   MYSELF, CINDY SHI, MY MANAGER, TOM BORGO, AND MR. HORNG HAD

04:25:18  18   BROUGHT SOMEONE WITH HIM, I DON'T RECALL WHETHER HE WAS THERE

04:25:21  19   FOR THE ENTIRE DURATION, BUT HE SAID HE BROUGHT A FRIEND.  I

04:25:27  20   DON'T KNOW WHO THAT WAS.

04:25:31  21   Q.   OKAY.  AND I APOLOGIZE FOR BRINGING THIS UP, BUT MR. BORGO

04:25:35  22   IS NO LONGER WITH US; IS THAT RIGHT?

04:25:37  23   A.   UNFORTUNATELY, HE'S DECEASED.

04:25:40  24   Q.   SO IF I UNDERSTOOD CORRECTLY THEN, MS. LIN WAS NOT PRESENT

04:25:45  25   AT THE THIRD MEETING?

DIRECT EXAMINATION BY MR. PITMAN                                      672

04:25:47   1      A.   NO, SHE WAS NOT.

04:25:48   2      Q.   OKAY.  AND DO YOU KNOW WHETHER SHE WAS AWARE THAT THAT

04:25:57   3      MEETING WAS OCCURRING?

04:25:58   4      A.   OH, YES, THEY CANCELLED MANY APPOINTMENTS.  SHE KNEW AT

04:26:03   5      THAT MEETING, THAT THEY WERE BOTH SUPPOSED TO BE THERE.

04:26:06   6      Q.   AND HOW DO YOU KNOW THAT?

04:26:07   7      A.   BECAUSE I REQUESTED IT AND I MADE SURE THAT MS. SHI KNEW

04:26:14   8      HOW IMPORTANT IT WAS THAT THEY BE THERE.

04:26:15   9      Q.   SO I'M A LITTLE CONFUSED BY YOUR ANSWER.  YOU SAID YOU

04:26:19   10     "REQUESTED IT."  WHAT DID YOU REQUEST?

04:26:21   11     A.   THAT THEY BOTH COME.  BECAUSE FIRST SHE WANTED TO MEET

04:26:24   12     WITH MY MANAGER, AND THEN SHE DECIDED THAT SHE WOULD -- DIDN'T

04:26:32   13     WANT TO MEET IN PERSON, SHE WANTED TO MEET -- BECAUSE MY

04:26:36   14     MANAGER WANTED TO SPEAK WITH THE DEFENDANTS.

04:26:38   15     Q.   OKAY.  SO DURING THE COURSE OF THIS THIRD MEETING, DID

04:26:45   16     ANYTHING HAPPEN DURING THE MEETING THAT INDICATED TO YOU THAT

04:26:50   17     MS. LIN WAS AWARE THAT THE MEETING WAS HAPPENING, CAN YOU THINK

04:26:54   18     OF ANYTHING?

04:26:54   19     A.   YES.  THEY SAID SHE WASN'T THERE BECAUSE SHE HAD TO TAKE

04:26:57   20     CARE OF HER KIDS.

04:26:59   21     Q.   OKAY.  SO -- OKAY.  NOW, AT THIS THIRD MEETING, WERE YOU

04:27:08   22     THERE IN YOUR OFFICIAL CAPACITY?

04:27:09   23     A.   YES.

04:27:10   24     Q.   SO YOU WERE THERE AS A REVENUE AGENT?

04:27:12   25     A.   YES.

| | | |
|---|---|---|
| 04:27:13 | 1 | Q.   CONDUCTING AN AUDIT? |
| 04:27:15 | 2 | A.   YES. |
| 04:27:15 | 3 | Q.   AND YOU WERE IN THE FEDERAL BUILDING IN SAN FRANCISCO? |
| 04:27:17 | 4 | A.   YES. |
| 04:27:18 | 5 | Q.   AND IT WASN'T A SOCIAL VISIT? |
| 04:27:22 | 6 | A.   OH, NO. |
| 04:27:23 | 7 | Q.   OKAY.  SO DURING THIS THIRD MEETING, DID YOU HAVE AN |
| 04:27:39 | 8 | OPPORTUNITY TO SHOW MR. HORNG SOME DOCUMENTS? |
| 04:27:43 | 9 | A.   YES, I DID. |
| 04:27:44 | 10 | Q.   SO LET ME ASK YOU, PLEASE, TO TAKE A LOOK AT EXHIBIT 242. |
| 04:27:53 | 11 | AND FEEL FREE TO USE THE PAPER IF YOU WOULD LIKE. |
| 04:27:58 | 12 | A.   I CAN SEE IT.  THANKS. |
| 04:27:59 | 13 | Q.   WELL, ACTUALLY, I WOULD LIKE TO, IF YOU DON'T MIND. |
| 04:28:03 | 14 | A.   YOU WANT ME TO USE THE PAPER?  DID YOU SAY 242? |
| 04:28:09 | 15 | Q.   YES. |
| 04:28:11 | 16 | (OFF-THE-RECORD DISCUSSION.) |
| 04:28:30 | 17 | Q.   OKAY.  SO EXHIBIT 242 IS ONE WE LOOKED AT BRIEFLY |
| 04:28:34 | 18 | YESTERDAY. |
| 04:28:34 | 19 | A.   RIGHT. |
| 04:28:37 | 20 | Q.   AND IT WAS -- LET'S TAKE A LOOK AT THE SECOND PAGE, |
| 04:28:40 | 21 | PLEASE.  SO THIS IS A LOAN APPLICATION THAT'S SIGNED BY MEILI |
| 04:28:53 | 22 | LIN REPORTING MONTHLY INCOME OF $125,000.  AND DO YOU SEE THE |
| 04:28:59 | 23 | SIGNATURE DATE? |
| 04:29:02 | 24 | A.   IT'S 2-7-07. |
| 04:29:05 | 25 | Q.   OKAY.  SO IT APPEARS TO BE AN APPLICATION SIGNED BY MEILI |

DIRECT EXAMINATION BY MR. PITMAN

04:29:11  1    LIN IN 2007, A YEAR WHICH SHE REPORTED TO THE IRS THAT SHE HAD

04:29:17  2    NEGATIVE INCOME?

04:29:18  3    A.   RIGHT.

04:29:18  4    Q.   AND YET SHE SIGNED A LOAN APPLICATION SAYING SHE WAS

04:29:22  5    MAKING $125,000 A MONTH?

04:29:25  6    A.   A MONTH, YES.

04:29:26  7    Q.   OKAY.  SO LET'S TAKE A LOOK THEN, PLEASE, AT EXHIBIT 244.

04:29:37  8         AND THIS IS A DOCUMENT WE LOOKED AT YESTERDAY AS WELL.

04:29:41  9    AND IF YOU TAKE A LOOK AT THE SECOND PAGE -- EXCUSE ME, IF YOU

04:30:15 10    LOOK AT THE THIRD PAGE.

04:30:21 11         OKAY.  SO THIS IS A DIFFERENT LOAN APPLICATION.

04:30:23 12    A.   YES.

04:30:23 13    Q.   CAN YOU SEE THE SIGNATURE DATE ON THIS ONE?

04:30:25 14    A.   12-30-05.

04:30:27 15    Q.   OKAY.  SO A COUPLE DAYS BEFORE THE BEGINNING OF 2006?

04:30:36 16    A.   RIGHT.

04:30:36 17    Q.   DO YOU RECOGNIZE THE SIGNATURE ON THIS DOCUMENT?

04:30:41 18    A.   YES.

04:30:42 19    Q.   AND WHOSE SIGNATURE IS IT?

04:30:43 20    A.   IT'S MEILI LIN'S.

04:30:45 21    Q.   OKAY.  SO IT APPEARS THAT A COUPLE OF DAYS BEFORE THE

04:30:47 22    BEGINNING OF 2006, A YEAR FOR WHICH SHE REPORTED TOTAL INCOME

04:30:51 23    TO THE IRS OF $212,000, I BELIEVE, SHE SIGNED AN OR SHE APPEARS

04:30:58 24    TO HAVE SIGNED A LOAN APPLICATION REPORTING SHE WAS EARNING

04:31:03 25    $125,000 A MONTHS?

04:31:04    1    A.    YES.

04:31:04    2    Q.    AND THEN IF YOU LOOK DOWN ON THE ASSETS OF THIS EXHIBIT.

04:31:20    3          SO HERE THE THIRD ASSET LISTED THERE, CAN YOU READ THAT

04:31:28    4    FOR THE JURY, PLEASE.

04:31:29    5    A.    AGRICULTURAL BANK OF CHINA.

04:31:31    6    Q.    OKAY.  SO IT'S -- AND WHAT IS THE VALUE REPORTED THERE ON

04:31:35    7    THIS APPLICATION?

04:31:35    8    A.    $880,000.

04:31:38    9    Q.    OKAY.  SO THIS IS -- YOU REVIEWED THE DEFENDANT'S

04:31:46   10    FORM 1040 FOR 2006, AND DID THAT FORM 1040 REPORT THAT THEY DID

04:31:54   11    HAVE INTEREST IN FOREIGN BANK ACCOUNTS OR THAT THEY DID NOT?

04:31:57   12    A.    THAT THEY DID NOT.

04:31:58   13    Q.    OKAY.  AND YET HERE'S AN APPLICATION SIGNED TWO DAYS

04:32:01   14    BEFORE THE END OF 2005 INDICATING WHAT MAY BE A FOREIGN ACCOUNT

04:32:07   15    WITH A VALUE OF ALMOST A MILLION DOLLARS?

04:32:10   16    A.    YES.

04:32:10   17    Q.    OKAY.  CAN WE TAKE A LOOK, PLEASE, AS EXHIBIT 243.  AND IF

04:32:19   18    YOU LOOK AT THE SECOND PAGE OF 243, NOW THIS IS ANOTHER LOAN

04:32:22   19    APPLICATION.  DO YOU SEE THE SIGNATURE DATE ON THIS LOAN

04:32:33   20    APPLICATION?

04:32:35   21    A.    5-23-06.

04:32:43   22    Q.    AND DO YOU RECOGNIZE THE SIGNATURE ON THIS DOCUMENT?

04:32:47   23    A.    YES, THAT'S MEILI LIN.

04:32:49   24    Q.    OKAY.  SO IN 2006, A YEAR FOR WHICH SHE REPORTED THAT HER

04:33:01   25    JOINT TOTAL INCOME WITH HER HUSBAND TO THE IRS WAS $232,000,

| | |
|---|---|
| 04:33:08 | 1 |
| 04:33:11 | 2 |
| 04:33:15 | 3 |
| 04:33:18 | 4 |
| 04:33:24 | 5 |
| 04:33:27 | 6 |
| 04:33:28 | 7 |
| 04:33:36 | 8 |
| 04:33:46 | 9 |
| 04:33:49 | 10 |
| 04:33:51 | 11 |
| 04:33:52 | 12 |
| 04:33:55 | 13 |
| 04:34:01 | 14 |
| 04:34:04 | 15 |
| 04:34:05 | 16 |
| 04:34:06 | 17 |
| 04:34:11 | 18 |
| 04:34:14 | 19 |
| 04:34:18 | 20 |
| 04:34:19 | 21 |
| 04:34:37 | 22 |
| 04:34:44 | 23 |
| 04:34:45 | 24 |
| 04:34:46 | 25 |

1   SHE APPEARS TO HAVE SIGNED A LOAN APPLICATION REPORTING TO THE

2   BANK THAT SHE WAS MAKING $133,000 PER MONTH?

3   A.   PER MONTH, YES.

4   Q.   SO AT THIS MEETING AT 450 GOLDEN GATE, DID YOU CONFRONT

5   MR. HORNG WITH THESE DOCUMENTS?

6   A.   YES, I DID.

7   Q.   OKAY.  AND WITH RESPECT, DID YOU DRAW HIS ATTENTION TO THE

8   FACT THAT ALL OF THESE LOAN APPLICATIONS REPORTED INCOME

9   ENORMOUSLY HIGHER THAN THEY HAD REPORTED ON THEIR 1040'S FOR

10   2006 AND 2007?

11   A.   YES, I DID MENTION IT.

12   Q.   AND WHAT DID HE SAY?

13   A.   HE SAID THAT THAT WAS A LIE THAT THE LOAN OFFICER MADE UP.

14   Q.   SO HE TOLD YOU THAT THE LOAN OFFICER HAD PUT THOSE NUMBERS

15   ON HIS LOAN APPLICATIONS?

16   A.   YES.

17   Q.   AND DID HE TELL YOU -- DO YOU REMEMBER, WHETHER MS. LIN

18   WAS AWARE THAT THAT HAD HAPPENED?

19   A.   I DON'T RECALL, BUT SHE DID INITIAL THE PAGES WHERE THE

20   INCOME IS LISTED.

21   Q.   OKAY.  AS PART OF YOUR WORK AUDITING THESE TAX RETURNS,

22   ARE STATEMENTS THAT TAXPAYERS MAKE TO YOU ABOUT THEIR INCOME

23   IMPORTANT?

24   A.   OH, OF COURSE.

25   Q.   SO A STATEMENT TO YOU BY A TAXPAYER WHO IS BEING AUDITED,

04:34:53   1    THAT FOR INSTANCE A LOAN APPLICATION THAT'S BEEN SIGNED AND

04:34:56   2    SUBMITTED TO A BANK HAS BEEN FALSIFIED BY A LOAN OFFICER, COULD

04:35:03   3    INFLUENCE YOUR WORK ON THE AUDIT; IS THAT FAIR TO SAY?

04:35:07   4    A.   YES.

04:35:07   5    Q.   SO IF YOU WERE TO BELIEVE IT, THEN YOU MAY NOT PER SUE

04:35:10   6    THIS AS SOMETHING TO INVESTIGATE?

04:35:13   7    A.   IF I WERE TO -- SAY AGAIN?

04:35:15   8    Q.   IF YOU WERE TO HAVE BELIEVED THE STATEMENT THAT THESE

04:35:18   9    DOCUMENTS WERE MODIFIED BY SOMEONE OTHER THAN MS. LIN, IT MAY

04:35:22   10   HAVE CHANGED THE COURSE OF THE AUDIT?

04:35:24   11   A.   IF I BELIEVED THAT, YES.

04:35:26   12   Q.   YES.  OKAY.

04:35:29   13       DID YOU ALSO DRAW MR. HORNG'S ATTENTION TO THE FACT THAT

04:35:37   14   ONE OF THESE APPLICATIONS -- WELL, LET'S TAKE A QUICK LOOK AT

04:35:40   15   IT, 244.  AND IF WE GO TO THE SECOND PAGE -- CAN WE GO TO THE

04:35:50   16   THIRD PAGE.  OKAY.

04:35:53   17       AND JOHN, CAN YOU BLOW UP THE ASSETS, PLEASE, ON THE LEFT.

04:36:06   18   I JUST WANT THE LEFT COLUMN, PLEASE.  OKAY.

04:36:12   19       SO DID YOU DRAW MR. HORNG'S ATTENTION TO THE FACT THAT

04:36:17   20   THERE WAS AN ASSET LISTED ON THIS LOAN APPLICATION, AN ACCOUNT

04:36:26   21   DESCRIBED AS THE AGRICULTURAL BANK OF CHINA, ACCOUNT NUMBER

04:36:31   22   23219.  DID YOU DRAW HIS ATTENTION TO THAT?

04:36:34   23   A.   I DID.

04:36:34   24   Q.   OKAY.  AND YOU CONFRONTED HIM WITH THAT?

04:36:36   25   A.   YES.

DIRECT EXAMINATION BY MR. PITMAN

04:36:39  1    Q.   AND DID HE SAY ANYTHING IN RESPONSE?

04:36:41  2    A.   YES, HE SAID THAT WAS A LIE THAT THE LOAN OFFICER MADE UP.

04:36:44  3    Q.   OKAY.  AND AGAIN, AS PART OF YOUR WORK AUDITING THE

04:36:50  4    TAXPAYER'S TAX RETURNS, WOULD THE PRESENCE OF AN $880,000

04:36:59  5    FOREIGN BANK ACCOUNT, COULD THAT INFLUENCE YOUR WORK ON THE

04:37:02  6    AUDIT?

04:37:02  7    A.   YES.

04:37:03  8    Q.   AND IF YOU HAD BELIEVED THAT THIS LOAN APPLICATION HAD

04:37:07  9    BEEN MODIFIED BY SOMEONE OTHER THAN MS. LIN, COULD THAT HAVE

04:37:11  10   CHANGED HOW YOU CONDUCTED THE REST OF THE AUDIT?

04:37:15  11   A.   YES.

04:37:16  12   Q.   OKAY.  I KNOW THAT WHEN WE TALKED A LITTLE BIT YESTERDAY

04:37:28  13   ABOUT THE SECOND MEETING, THE ONE QUESTION YOU REMEMBERED

04:37:31  14   ASKING -- THERE WAS ONE QUESTION YOU REMEMBER ASKING BOTH

04:37:34  15   DEFENDANTS; IS THAT RIGHT?

04:37:35  16   A.   THAT'S RIGHT.

04:37:35  17   Q.   AND WHAT QUESTION WAS THAT?

04:37:37  18   A.   I ASKED EACH OF THEM IF THEY HAD ANY FOREIGN BANK

04:37:40  19   ACCOUNTS, ANYWHERE OUTSIDE THE U.S., NOW OR EVER.

04:37:43  20   Q.   OKAY.  AND WHAT DID THEY TELL YOU?

04:37:47  21   A.   THEY EACH TOLD ME NO.

04:37:48  22   Q.   OKAY.  AND DID YOU ASK MR. HORNG AT THIS THIRD MEETING AT

04:37:57  23   450 GOLDEN GATE, DID YOU ASK HIM AGAIN ABOUT FOREIGN ACCOUNTS?

04:38:02  24   A.   YES.

04:38:02  25   Q.   AND DO YOU REMEMBER WHAT YOU ASKED HIM?

DIRECT EXAMINATION BY MR. PITMAN

| | | |
|---|---|---|
| 04:38:04 | 1 | A.   HE DOESN'T HAVE ANY.  THAT'S NOT THEIR MONEY. |
| 04:38:07 | 2 | Q.   DO YOU REMEMBER WHAT YOU ASKED HIM? |
| 04:38:11 | 3 | A.   I DON'T REALLY RECALL WHAT SPECIFICALLY. |
| 04:38:21 | 4 | Q.   OKAY.  SO MY QUESTION IS DID YOU DISCUSS FOREIGN BANK |
| 04:38:27 | 5 | ACCOUNTS WITH MR. HORNG AT THE THIRD MEETING? |
| 04:38:29 | 6 | A.   YES. |
| 04:38:29 | 7 | Q.   AND DO YOU REMEMBER WHAT YOU ASKED HIM ABOUT FOREIGN BANK |
| 04:38:33 | 8 | ACCOUNTS? |
| 04:38:33 | 9 | A.   I ASKED HIM IF HE HAD ANY. |
| 04:38:35 | 10 | Q.   OKAY. |
| 04:38:36 | 11 | A.   AND I ASKED HIM IF THIS WAS HIS. |
| 04:38:38 | 12 | Q.   LET JUST TAKE IT ONE STEP AT A TIME. |
| 04:38:41 | 13 | SO YOU ASKED MR. HORNG IF HE HAD ANY FOREIGN BANK |
| 04:38:46 | 14 | ACCOUNTS? |
| 04:38:46 | 15 | A.   IF THEY HAD ANY FOREIGN BANK ACCOUNTS. |
| 04:38:49 | 16 | Q.   OKAY.  SO WHAT IS IT THAT YOU ASKED MR. HORNG? |
| 04:38:52 | 17 | A.   DID YOU HAVE ANY FOREIGN BANK ACCOUNTS. |
| 04:38:56 | 18 | Q.   OKAY.  SO DO YOU REMEMBER SPECIFICALLY IF YOU ASKED |
| 04:38:59 | 19 | WHETHER HE OR THEY HAD FOREIGN BANK ACCOUNTS? |
| 04:39:05 | 20 | A.   I CAN'T RECALL.  I WOULD HAVE TO MAYBE REFRESH MY MEMORY |
| 04:39:11 | 21 | WITH MY NOTES. |
| 04:39:12 | 22 | Q.   OKAY.  DID YOU TAKE NOTES DURING THESE MEETINGS? |
| 04:39:14 | 23 | A.   I DID. |
| 04:39:15 | 24 | Q.   OKAY.  SO LET ME ASK YOU PLEASE TO TURN TO TAB 237.  IS IT |
| 04:39:40 | 25 | IN THE BINDER IN FRONT OF YOU? |

DIRECT EXAMINATION BY MR. PITMAN

| | | |
|---|---|---|
| 04:39:45 | 1 | A.   PROBABLY.  IT STARTS AT 238. |
| 04:39:48 | 2 | MR. PITMAN:  MAY I APPROACH, YOUR HONOR? |
| 04:39:49 | 3 | THE COURT:  YES. |
| 04:40:23 | 4 | THE WITNESS:  YES.  I WROTE -- |
| 04:40:25 | 5 | BY MR. PITMAN: |
| 04:40:26 | 6 | Q.   OKAY.  SO JUST SO THE JURY KNOWS, WHAT ARE YOU LOOKING AT |
| 04:40:29 | 7 | RIGHT NOW? |
| 04:40:30 | 8 | A.   I'M LOOKING AT MY SUMMARY THAT I WROTE UP OF THE |
| 04:40:33 | 9 | INTERVIEW. |
| 04:40:33 | 10 | Q.   OKAY.  AND HAVING LOOKED AT THAT SUMMARY, DO YOU HAVE A |
| 04:40:37 | 11 | CLEARER MEMORY -- |
| 04:40:39 | 12 | MR. CANNON:  EXCUSE ME.  COULD WE HAVE A MORE |
| 04:40:41 | 13 | SPECIFIC REFERENCE AS TO WHAT PART OF THE SUMMARY? |
| 04:40:43 | 14 | MR. PITMAN:  SURE. |
| 04:40:44 | 15 | IF IT'S OKAY, YOUR HONOR, I WILL APPROACH AND JUST GET A |
| 04:40:47 | 16 | BATES NUMBER.  THANK YOU. |
| 04:40:52 | 17 | IT'S PAGE 144. |
| 04:40:58 | 18 | MR. CANNON:  1 -- |
| 04:40:59 | 19 | MR. PITMAN:  44. |
| 04:41:08 | 20 | SORRY, YOUR HONOR. |
| 04:41:20 | 21 | Q.   MS. GARRISON, CAN YOU JUST TELL ME THE EXHIBIT NUMBER YOU |
| 04:41:23 | 22 | ARE LOOKING AT?  I'M SORRY, I'VE FORGOTTEN. |
| 04:41:27 | 23 | A.   SURE, IT'S EXHIBIT 237. |
| 04:42:00 | 24 | BY MR. PITMAN: |
| 04:42:00 | 25 | Q.   OKAY.  SO MS. GARRISON, CAN YOU PUT THAT AWAY NOW THAT |

04:42:03  1    YOU'VE HAD A CHANCE TO LOOK AT IT.

04:42:05  2         AND HAVING REFERRED TO THE SUMMARY YOU CREATED OF THE

04:42:11  3    THIRD INTERVIEW, DO YOU HAVE A BETTER MEMORY OF THE SPECIFIC

04:42:15  4    QUESTION THAT YOU ASKED MR. HORNG WITH RESPECT TO FOREIGN BANK

04:42:20  5    ACCOUNTS?

04:42:20  6    A.   YES, I ASKED IF EITHER OF THEM HAD EVER HAD ANY FOREIGN

04:42:25  7    BANK ACCOUNTS, ANY ACCOUNTS OUTSIDE THE COUNTRY.

04:42:27  8    Q.   OKAY.  AND WHAT DID HE TELL YOU?

04:42:30  9    A.   HE TOLD ME THAT NEITHER HE NOR MEILI LIN HAD EVER HAD ANY

04:42:38  10   FOREIGN BANK ACCOUNTS OUTSIDE THE COUNTRY OF THE U.S.

04:42:41  11   Q.   AND NOT TO BELABOR THE POINT, BUT YOUR WORK AS A REVENUE

04:42:45  12   AGENT AUDITING THESE TAX RETURNS, THE PRESENCE OR ABSENCE OF A

04:42:49  13   FOREIGN ACCOUNT IS A POTENTIALLY SIGNIFICANT ISSUE; IS THAT

04:42:51  14   FAIR TO SAY?

04:42:52  15   A.   YES.

04:42:53  16   Q.   OKAY.  NOW LET ME ASK YOU TO TAKE A LOOK, PLEASE, AS

04:43:06  17   EXHIBIT 227.

04:43:26  18        SO WHAT IS EXHIBIT 227?

04:43:30  19   A.   THAT'S A BUSINESS CARD.

04:43:31  20   Q.   OKAY.  AND ARE YOU FAMILIAR WITH IT?

04:43:34  21   A.   YES, I AM.

04:43:35  22   Q.   AND AS PART OF YOUR WORK WITH MR. HORNG, DID YOU SHOW HIM

04:43:39  23   THAT BUSINESS CARD AND DISCUSS IT WITH HIM?

04:43:42  24   A.   YES, I DID.

04:43:43  25   Q.   OKAY.

DIRECT EXAMINATION BY MR. PITMAN

04:43:44  1          MR. PITMAN:  YOUR HONOR, I MOVE FOR ADMISSION OF

04:43:45  2    EXHIBIT 227.

04:43:48  3          THE COURT:  ANY OBJECTION?

04:43:49  4          MR. CANNON:  NO OBJECTION.

04:43:49  5          THE COURT:  IT WILL BE ADMITTED.

04:43:51  6       (PLAINTIFF'S EXHIBIT 227 WAS ADMITTED INTO EVIDENCE.)

04:43:51  7    BY MR. PITMAN:

04:44:10  8    Q.   SO DO YOU REMEMBER WHERE YOU FOUND THIS BUSINESS CARD?

04:44:16  9    A.   YES, IT WAS PROVIDED BY THE BANK.

04:44:19  10   Q.   OKAY.  SO A BANK HAD COLLECTED IT AT SOME POINT?

04:44:21  11   A.   YES.

04:44:22  12   Q.   AND IT CAME TO YOU IN THE RECORDS THAT YOU SUMMONED?

04:44:27  13   A.   RIGHT.

04:44:28  14   Q.   SO IF I REMEMBER CORRECTLY, AND PLEASE CORRECT ME IF I'M

04:44:35  15   WRONG, DURING THE SECOND MEETING, THE DEFENDANTS TOLD YOU THAT

04:44:40  16   THEY WEREN'T CURRENTLY AFFILIATED WITH FLORENCE TRADING?

04:44:44  17   A.   YES, THAT IS WHAT THEY SAID.

04:44:47  18   Q.   AND SO AT THE THIRD MEETING AT 450 GOLDEN GATE, DID YOU

04:44:51  19   CONFRONT MR. HORNG WITH THIS BUSINESS CARD?

04:44:55  20   A.   YES.  I DON'T KNOW IF IT WAS AT THE SECOND OR THE THIRD

04:44:59  21   MEETING, PROBABLY THE THIRD.  I THINK IT WAS THE THIRD.

04:45:03  22   Q.   WELL, IT'S AN IMPORTANT POINT, SO IS THERE SOMETHING THAT

04:45:07  23   WOULD HELP YOU REMEMBER?

04:45:09  24   A.   YES.  WELL, IT WOULD BE THE THIRD BECAUSE I WOULD HAVE --

04:45:17  25   WELL, IF I CAN READ MY SUMMARY AGAIN, IT MAY BE IN THERE, BUT I

DIRECT EXAMINATION BY MR. PITMAN

04:45:22   1    BELIEVE IT WAS THE THIRD BECAUSE THAT IS WHERE I BROUGHT UP ALL

04:45:25   2    OF THE ITEMS I WANTED CLARIFICATION ON.

04:45:27   3    Q.    OKAY.  SO WOULD IT BE HELPFUL FOR YOU TO TAKE A LOOK AT

04:45:30   4    YOUR SUMMARY OF THE THIRD INTERVIEW?

04:45:32   5    A.    YES.

04:45:34   6    Q.    OKAY.  I THINK IT'S 238.

04:45:50   7    A.    THAT'S MY ACTIVITY RECORD.

04:45:52   8    Q.    OH, SORRY, HOLD ON.

04:45:54   9    A.    BUT I MAY HAVE LISTED IT.

04:46:10   10   Q.    SO WHAT DOCUMENT ARE YOU LOOKING AT NOW?

04:46:12   11   A.    WELL, THIS IS MY ACTIVITY RECORD TO SEE IF I HAD ASKED

04:46:15   12   ABOUT IT.

04:46:16   13   Q.    IS THAT EXHIBIT 238?

04:46:18   14   A.    YES.

04:46:19   15   Q.    OKAY.

04:46:42   16   A.    THE INTERVIEW SUMMARIES, WHAT SECTION WOULD THAT BE IN?

04:46:46   17   Q.    SO 237.  I BELIEVE 237 IS YOUR SUMMARY OF THE THIRD

04:46:58   18   INTERVIEW.

04:46:59   19   A.    OKAY.

04:46:59   20   Q.    ARE YOU LOOKING AT 237 OR ARE YOU LOOKING AT SOMETHING

04:47:04   21   ELSE?

04:47:05   22   A.    I WAS LOOKING AT THE ACTIVITY RECORD TO SEE, THAT'S 238.

04:47:08   23   237.

04:47:33   24   Q.    AND MS. GARRISON, DON'T FEEL TIME PRESSURE, TAKE YOUR

04:47:37   25   TIME.

04:47:37  1    A.   OKAY.  THANK YOU.

04:48:09  2         IT WAS AT THE THIRD MEETING THAT I ASKED.  I SHOWED HIM

04:48:14  3    THE CARD.

04:48:15  4    Q.   SO YOU HAD A CHANCE TO LOOK AT EXHIBIT 237?

04:48:17  5    A.   YES.

04:48:17  6    Q.   AND DOES THAT HELP YOU REMEMBER WHEN IT WAS THAT YOU

04:48:20  7    SHOWED MR. HORNG THE BUSINESS CARD FOR FLORENCE TRADING?

04:48:22  8    A.   YES, I SHOWED IT AT THE THIRD INTERVIEW BECAUSE AT THE

04:48:26  9    SECOND INTERVIEW THEY TOLD ME THEY HAD NOTHING TO DO WITH

04:48:29  10   FLORENCE TRADING, AND YET I HAVE A BUSINESS CARD.

04:48:32  11   Q.   AND THEN AT THE THIRD MEETING, THE ONE WE HAVE JUST BEEN

04:48:36  12   DISCUSSING, DID YOU SHOW THE BUSINESS CARD TO MR. HORNG?

04:48:38  13   A.   I DID.

04:48:39  14   Q.   AND CONFRONT HIM WITH IT?

04:48:40  15   A.   I DID.

04:48:41  16   Q.   AND DO YOU REMEMBER WHAT HE SAID TO YOU IN RESPONSE?

04:48:43  17   A.   HE SAID THAT OH, SOMETIMES HE DOES TRANSLATIONS OF E-MAILS

04:48:49  18   FOR HIS FATHER-IN-LAW, AND SO HE NEEDS TO HAVE A CARD.

04:48:54  19   Q.   OKAY.  AND WHETHER OR NOT THE DEFENDANTS HAD AN

04:49:03  20   AFFILIATION WITH AN ENTITY THAT WAS NOT REPORTED ON THEIR TAX

04:49:08  21   RETURNS, IS THAT AN ISSUE THAT COULD BE MATERIAL IN YOUR WORK

04:49:12  22   AS A REVENUE AGENT?

04:49:13  23   A.   YES.

04:49:14  24   Q.   AND WAS THAT YOUR LAST MEETING WITH THE DEFENDANTS, THE

04:49:31  25   THIRD ONE?

04:49:32  1    A.   YES.

04:49:33  2    Q.   IT WAS.  OKAY.  SO GENERALLY SPEAKING, HOW DO IRS AUDITS

04:49:42  3    END?

04:49:44  4    A.   GENERALLY SPEAKING, THEY END WITH A REPORT BEING ISSUED,

04:49:51  5    THE REVENUE AGENT REPORT, WE CALL IT RAR, AND IT'S DISCUSSED

04:49:56  6    WITH THE TAXPAYERS.

04:49:58  7    Q.   OKAY.  AND SO THAT'S, IS THAT LIKE AN OFFICIAL CONCLUSION

04:50:01  8    OF THE AUDIT, BASICALLY?

04:50:04  9    A.   YES.

04:50:05  10   Q.   IS THAT FAIR TO SAY?

04:50:06  11   A.   YES.

04:50:06  12   Q.   OKAY.

04:50:15  13        SO TELL US AGAIN WHAT YOU CALL THAT REPORT?

04:50:17  14   A.   AN RAR, WHICH STANDS FOR REVENUE AGENT REPORT.

04:50:20  15   Q.   OKAY.  SO DID YOU FORMALLY ISSUE AN RAR AT THE END OF THIS

04:50:26  16   AUDIT?

04:50:30  17   A.   NO.

04:50:30  18   Q.   AND CAN YOU TELL THE JURY WHY YOU DIDN'T?

04:50:32  19   A.   I DIDN'T HAVE ENOUGH INFORMATION TO COME TO A CONCLUSION

04:50:39  20   BECAUSE I -- I COULDN'T GET THE RECORDS FOR EVERYONE THAT WAS

04:50:45  21   PUTTING MONEY INTO THESE ACCOUNTS, I CAN'T GET FOREIGN RECORDS.

04:50:50  22   Q.   OKAY.  SO YOU ARE TELLING THE JURY YOU WEREN'T ABLE TO GET

04:50:54  23   INFORMATION ABOUT WHERE THE MONEY WAS COMING FROM?

04:50:57  24   A.   UH-HUH.

04:50:57  25   Q.   IS THAT SOMETHING THAT WOULD NORMALLY BE IMPORTANT IN AN

DIRECT EXAMINATION BY MR. PITMAN

04:51:01  1    AUDIT LIKE THIS?

04:51:02  2    A.   YES.

04:51:02  3    Q.   AND CAN YOU JUST DESCRIBE TO THE JURY WHY IT WOULD BE

04:51:04  4    IMPORTANT TO BE ABLE TO SPEAK TO THE PEOPLE SENDING MONEY TO

04:51:08  5    THE COMPANY THAT YOU'RE AUDITING?

04:51:11  6    A.   WELL, YES, BECAUSE I NEED TO DETERMINE WHAT IS THAT FOR,

04:51:16  7    WAS IT FOR PRODUCTS, SERVICES, IS IT INCOME.

04:51:19  8    Q.   RIGHT.  SO IT COULD BE, IN SOME CASES, THAT BUSINESS BANK

04:51:26  9    ACCOUNTS RECEIVE MONEY THAT IS NOT TAXABLE?

04:51:29  10   A.   YES, IT COULD BE.

04:51:31  11   Q.   AND GENERALLY SPEAKING, IN AN AUDIT, YOU WOULD LIKE TO

04:51:36  12   FIGURE THAT OUT?

04:51:36  13   A.   YES.

04:51:37  14   Q.   BUT IN THIS CASE, YOU WEREN'T ABLE TO?

04:51:40  15   A.   RIGHT.

04:51:41  16   Q.   AND CAN YOU JUST EXPLAIN TO THE JURY WHY YOU WEREN'T ABLE

04:51:44  17   TO DO THAT.

04:51:47  18   A.   BECAUSE WE AREN'T ABLE TO CONTACT A FOREIGN COUNTRY TO GET

04:51:51  19   RECORDS.  IF I NEED RECORDS HERE, I CAN ISSUE A SUMMONS,

04:51:56  20   DOMESTICALLY.  BUT I CAN'T DO THAT WITH ANOTHER FOREIGN

04:52:00  21   COUNTRY.

04:52:01  22   Q.   AND SO THE MONEY COME INTO REIJIN'S BANK ACCOUNT, WAS

04:52:05  23   COMING FROM FOREIGN COUNTRIES?

04:52:07  24   A.   YES.

04:52:07  25   Q.   AND YOU DIDN'T HAVE THE CAPACITY TO CONTACT THOSE SENDERS

687

DIRECT EXAMINATION BY MR. PITMAN

| | |
|---|---|
| 04:52:13  1 | AND ASK WHY THAT MONEY WAS COMING IN? |
| 04:52:15  2 | A.   NO. |
| 04:52:16  3 | MR. CANNON:  OBJECTION.  LEADING. |
| 04:52:19  4 | THE COURT:  SUSTAINED. |
| 04:52:20  5 | BY MR. PITMAN: |
| 04:52:21  6 | Q.   DID YOU OR DID YOU NOT HAVE THE CAPACITY TO CONTACT THE |
| 04:52:25  7 | INDIVIDUALS AND ENTITIES THAT WERE SENDING MONEY TO REIJIN'S |
| 04:52:28  8 | ACCOUNTS? |
| 04:52:29  9 | A.   I DID NOT HAVE THAT ABILITY. |
| 04:52:31 10 | Q.   OKAY.  SO YOU MET WITH MS. LIN ONCE AND MR. HORNG TWICE |
| 04:52:41 11 | AND THEIR CPA THREE TIMES; IS THAT RIGHT? |
| 04:52:43 12 | A.   THAT'S RIGHT. |
| 04:52:44 13 | Q.   OKAY.  AT ANY OF THOSE MEETINGS, DID ANYONE EVER TELL YOU |
| 04:52:50 14 | THAT THE MILLIONS OF DOLLARS COMING INTO REIJIN'S BANK ACCOUNTS |
| 04:52:54 15 | WERE ALL THEIR FAMILY'S MONEY? |
| 04:52:57 16 | A.   NO. |
| 04:52:57 17 | Q.   AND DURING ANY OF THOSE MEETINGS, DID ANYONE EVER SHOW |
| 04:53:11 18 | YOU -- |
| 04:53:11 19 | MR. PITMAN:  YOUR HONOR, I'M GOING TO APPROACH THE |
| 04:53:13 20 | WITNESS AND SHOW HER WHAT'S BEEN MARKED AS EXHIBIT 754. |
| 04:53:20 21 | Q.   HAVE YOU EVER SEEN THESE DOCUMENTS BEFORE? |
| 04:53:22 22 | A.   NO.  I'VE NEVER SEEN THESE DOCUMENTS. |
| 04:53:45 23 | MR. PITMAN:  I DON'T HAVE ANY FURTHER QUESTIONS, |
| 04:53:48 24 | YOUR HONOR. |
| 04:53:48 25 | THE COURT:  THIS WOULD BE A GOOD TIME TO STOP FOR THE |

UNITED STATES COURT REPORTERS

688

```
04:53:51   1        DAY.
04:53:51   2              ALL RIGHT.  TOMORROW YOU ARE NOT HERE, YOU HAVE A DAY OFF.
04:53:54   3     I WILL BE HERE, BUT YOU WOULD LIKE TO GET A LITTLE BREAK I'M
04:53:57   4     SURE.  I'M GOING TO HAVE YOU COME BACK ON FRIDAY MORNING AT
04:54:00   5     9:00.  WE WILL HAVE A FULL DAY ON FRIDAY.
04:54:02   6              LET ME REMIND YOU, YOU ARE NOT TO FORM OR EXPRESS ANY
04:54:05   7     OPINIONS IN THE CASE, DON'T DO ANY RESEARCH OR INVESTIGATION OR
04:54:08   8     TALK TO ANYONE OR WRITE TO ANYONE IN ANY WAY ABOUT THE CASE.
04:54:12   9              SO HAVE A GOOD EVENING, HAVE A GOOD DAY OFF TOMORROW, I
04:54:14  10     WILL SEE YOU ALL ON FRIDAY.
04:54:17  11              (JURY OUT AT 4:54 P.M.)
04:54:43  12              THE COURT:  ALL RIGHT.  THE WITNESS MAY STEP DOWN
04:54:45  13      FROM THE WITNESS STAND.
04:54:46  14              THE WITNESS:  THANK YOU.
04:54:46  15              THE COURT:  THANK YOU.
04:54:47  16              MR. PITMAN:  AND YOUR HONOR, I WILL INSTRUCT AGENT
04:54:50  17     GARRISON TO BE AVAILABLE FIRST THING FRIDAY MORNING FOR
04:54:54  18     CROSS-EXAMINATION.
04:54:54  19              THE COURT:  OKAY.  GOOD.  YES, THAT'S WHEN WE WILL
04:54:57  20     PICK UP CROSS-EXAMINATION.
04:54:59  21          THANK YOU.
04:54:59  22          I HAVE NO HOUSEKEEPING MATTERS.  IS THERE ANYTHING?
04:55:03  23              MS. POLLACK:  I DO HAVE ONE, YOUR HONOR.
04:55:04  24              THE COURT:  YES, MS. POLLACK.
04:55:08  25              MS. POLLACK:  OUTSIDE THE PRESENCE OF THE WITNESS.
```

689

| | | |
|---|---|---|
| 04:55:10 | 1 | THE COURT:  OKAY. |
| 04:55:12 | 2 | THANK YOU, MS. GARRISON, WE WILL SEE YOU ON FRIDAY. |
| 04:55:15 | 3 | THE WITNESS:  OKAY.  GREAT.  THANK YOU. |
| 04:55:31 | 4 | THE COURT:  OKAY.  EVERYONE CAN BE SEATED, IF YOU |
| 04:55:33 | 5 | LIKE. |
| 04:55:34 | 6 | GO AHEAD. |
| 04:55:39 | 7 | MS. POLLACK:  MAY I BE HEARD? |
| 04:55:44 | 8 | THE COURT:  I CAN'T HEAR YOU. |
| 04:55:49 | 9 | MS. POLLACK:  THROUGHOUT THE COURSE OF THIS CASE, AND |
| 04:55:51 | 10 | I WAS PRESENT IN MS. LIN'S ARRAIGNMENT BEFORE THE MAGISTRATE, |
| 04:55:55 | 11 | SHE HAS USED THE ASSISTANCE OF A COURT INTERPRETER, MANDARIN. |
| 04:56:00 | 12 | PRIOR TO RECEIVING THE QUESTIONNAIRES LAST WEEK, AND THEN |
| 04:56:03 | 13 | THE FOLLOWUP WITH JURY SELECTION, IT WAS MY INTENTION THAT SHE |
| 04:56:07 | 14 | TESTIFY IN MANDARIN.  HOWEVER, GIVEN THE STRONG REACTION OF, I |
| 04:56:13 | 15 | WOULD SAY, 95 PERCENT OF THE JURORS TO -- ABOUT HOW THEY FEEL |
| 04:56:24 | 16 | ABOUT SOMEONE WHO RESIDES IN THE UNITED STATES WHO IS A CITIZEN |
| 04:56:27 | 17 | AND DOES NOT SPEAK ENGLISH, I HAVE BEEN PREPARING HER IN |
| 04:56:30 | 18 | ENGLISH AND IN MANDARIN, AND I FELT IT WAS BEST THAT SHE SPEAK |
| 04:56:35 | 19 | IN ENGLISH AND PRESENT HERSELF BEFORE THE JURY, BECAUSE SHE |
| 04:56:38 | 20 | DOES INTEND TO TESTIFY. |
| 04:56:40 | 21 | MY CONCERN WAS COMPREHENSION OF WORDS, AND IF SHE |
| 04:56:44 | 22 | MISUNDERSTOOD ONE WORD, THAT IS AN IMPACT, AND I THINK SOME OF |
| 04:56:48 | 23 | THE JURORS HAD MENTIONED THAT. |
| 04:56:50 | 24 | WHAT I PROPOSED OR THOUGHT ABOUT DOING, AND I HAD TALKED |
| 04:56:53 | 25 | TO ONE OF THE INTERPRETERS, WAS HAVING HER SPEAK IN ENGLISH, |

04:56:57   1    TESTIFY IN ENGLISH, WITH THE ASSISTANCE OF A STAND-BY

04:56:59   2    INTERPRETER IN CASE SHE DOES NOT UNDERSTAND A QUESTION THAT'S

04:57:03   3    POSED.

04:57:03   4        AND THE INTERPRETER I WAS TALKING TO, HE'S NOT PRESENT

04:57:06   5    TODAY, TOLD ME HE HAD DONE THAT IN THE CHOU CASE IN

04:57:11   6    SAN FRANCISCO, AND THAT'S WHAT I WOULD PROPOSE TO DO.

04:57:14   7        I WANTED TO BRING IT TO THE COURT'S ATTENTION SINCE WE ARE

04:57:17   8    GETTING TO THAT POINT.  IT'S PROBABLY NEXT WEEK.

04:57:19   9        THE COURT:  I DON'T THINK THAT'S PARTICULARLY

04:57:21  10    UNUSUAL, BUT DOES THE GOVERNMENT HAVE ANY COMMENT?

04:57:23  11        I WOULD NEED THE PROPER WAIVERS, OF COURSE, BUT I'M SURE

04:57:26  12    YOU UNDERSTAND THAT.

04:57:27  13        MR. PITMAN:  SO I WILL JUST CONSULT WITH MY

04:57:29  14    COLLEAGUES THAT HANDLED THAT PROSECUTION AND MAKE SURE THERE

04:57:32  15    WEREN'T ANY ISSUES, BUT MY GOAL WOULD BE NOT TO DISRUPT THE

04:57:36  16    PROCESS.

04:57:36  17        THE COURT:  OKAY.  I THINK IT'S A PERFECTLY

04:57:38  18    REASONABLE REQUEST.

04:57:41  19        AND I WILL JUST WANT -- OUTSIDE THE PRESENCE OF THE JURY,

04:57:47  20    I WILL HAVE TO GET WAIVERS.  AND FRANKLY, AT ANY TIME IF

04:57:52  21    MS. LIN WERE TO DECIDE SHE NEEDED TO HAVE EVERYTHING THROUGH

04:57:56  22    THE INTERPRETER, I WOULD HAVE NO PROBLEM WITH THAT EITHER.

04:57:59  23        SO I THINK IT'S COMPLETELY IN HER HANDS.  I WOULD BE --

04:58:06  24    WELL, I MEAN, YOU WILL HAVE TO EVALUATE WHETHER SHE NEEDS

04:58:09  25    ASSISTANCE ON A WORD AND HOW THAT APPEARS TO THE JURY, BUT I

04:58:15  1    THINK THAT'S MAYBE BETWEEN HER AND THE JURY AS TO WHAT IT LOOKS

04:58:18  2    LIKE TO THEM, BECAUSE THEY EVALUATE HER CREDIBILITY.

04:58:21  3         BUT OUR INTERPRETERS ARE CERTIFIED, I HAVE EVERY

04:58:24  4    CONFIDENCE THAT THEY WILL DO THEIR JOBS PROFESSIONALLY.  SO,

04:58:29  5    YOU KNOW, I DON'T HAVE A PROBLEM.

04:58:31  6         MR. PITMAN:  AND I WOULD JUST LIKE TO PUT ON THE

04:58:32  7    RECORD THAT WE DON'T AGREE WITH THE CHARACTERIZATION OF THE

04:58:35  8    PERCENTAGE OF THE JURY THAT EXPRESSED CONCERNS.

04:58:37  9         THE COURT:  NO, I DON'T AGREE WITH THAT EITHER.

04:58:39 10    THERE WERE A NUMBER OF JURORS WHO HAD A STRONG REACTION.

04:58:42 11    I DIDN'T ACTUALLY LOOK AT WHETHER ANY OF OUR SEATED JURORS HAD

04:58:46 12    THAT REACTION.

04:58:47 13         MS. POLLACK:  I'M NOT SURE THE SEATED JURORS, BUT IT

04:58:49 14    SEEMED TO BE THE DOMINANT QUESTION.  MAYBE I'M OFF ON THE

04:58:53 15    PERCENTAGE.

04:58:54 16         THE COURT:  I THINK IT'S A CHOICE MS. LIN CAN MAKE.

04:58:56 17    IT'S AN ELECTION SHE CAN MAKE, AND IT'S AN ELECTION SHE CAN

04:59:01 18    CHANGE IN THE MIDDLE OF HER TESTIMONY.

04:59:02 19         MS. POLLACK:  THAT'S FINE.

04:59:03 20    THANK YOU, YOUR HONOR.

04:59:03 21         THE COURT:  OKAY.  ABSOLUTELY.

04:59:05 22    ALL RIGHT.  ANYTHING ELSE?

04:59:08 23    AND MR. PITMAN, YOU WERE GRACIOUS TO GIVE ME AN UPDATE ON

04:59:16 24    HOW OUR SCHEDULE WAS LOOKING.  SO I DON'T KNOW WHETHER TODAY

04:59:19 25    WENT FASTER OR SLOWER THAN YOU THOUGHT, BUT WHAT DO YOU THINK?

04:59:23  1        MR. PITMAN:  IT'S LIKE TODAY NEVER HAPPENED,

04:59:25  2   YOUR HONOR.  SO I DON'T EXPECT, NOW, THAT WE WILL FINISH ON

04:59:28  3   FRIDAY.

04:59:30  4        UNFORTUNATELY, I WAS HOPING TO PASS MS. GARRISON BEFORE

04:59:34  5   11:00 IN MORNING, SO THAT SHOWS YOU HOW MY SCHEDULE WORKED

04:59:37  6   TODAY.

04:59:37  7        WE DO HAVE THE WITNESS, I IMAGINE, THERE WILL BE EXTENSIVE

04:59:42  8   CROSS-EXAMINATION OF AGENT GARRISON, AND THE WITNESS AFTER THAT

04:59:44  9   WILL TAKE SOME TIME AS WELL.

04:59:46 10        THE COURT:  SURE.

04:59:46 11        MR. PITMAN:  SO I DON'T EXPECT THAT WE WILL BE

04:59:48 12   RESTING ON FRIDAY.

04:59:49 13        THERE ARE STILL -- THE WITNESS AFTER HER WILL BE LESS, AND

04:59:54 14   THEN THERE WILL BE SEVERAL ADDITIONAL WITNESSES BEFORE

04:59:57 15   JOWEI CAMPBELL TESTIFIES.

04:59:59 16        THE COURT:  OKAY.  THAT'S FINE.

05:00:00 17        IT'S REALLY MOSTLY SO THE DEFENDANTS KNOW WHEN THEY HAVE

05:00:04 18   TO HAVE THEIR FIRST WITNESS READY AND BE PREPARED ON IT.  SO

05:00:07 19   NOW THEY ARE OFF THE HOOK ON FRIDAY, THAT'S WHAT YOU ARE

05:00:09 20   TELLING THEM.

05:00:10 21        MR. PITMAN:  I AM TELLING THEM THAT YOUR HONOR, YES.

05:00:13 22        THE COURT:  I THINK THAT'S GOOD TO HAVE THAT

05:00:16 23   INFORMATION.

05:00:16 24        ALL RIGHT.  THAT'S FINE, AND I THINK WE -- I DON'T KNOW

05:00:20 25   WHETHER THE DEFENSE CASE IS EXPECTED TO TAKE LONGER THAN THE

693

PROSECUTION CASE OR LESS TIME, AND I DON'T KNOW WHETHER THE
DEFENSE EVEN WANTS TO TELL ME THAT, I'M NOT ASKING.

        BUT, YOU KNOW, I'M JUST CONCERNED ABOUT STAYING ON
SCHEDULE.  SO IF YOU FINISH BY TUESDAY, EVEN, I THINK WE ARE
STILL ON SCHEDULE.

            MR. PITMAN:  I THINK I TOLD YOU FOUR OR FIVE DAYS FOR
OUR CASE IN CHIEF.

            THE COURT:  YES, BUT MS. POLLACK IMMEDIATELY MODIFIED
THAT BY INDICATING SHE FELT YOU HAD UNDERESTIMATED THE TIME FOR
CROSS-EXAMINATION.

        SO I BELIEVED HER, AND SHE WAS RIGHT.  SO I WASN'T GOING
ON YOUR ESTIMATE, I WAS GOING ON HER AMENDMENT TO IT.

            MR. PITMAN:  WE ARE GOING TO HIT FIVE DAYS,
YOUR HONOR, WITHIN MY PREDICTION.

            THE COURT:  ALL RIGHT.

        AND AS I SAY, I THINK WHEN THE DEFENSE STARTS THEIR CASE,
I WOULD LIKE SOME TIME ESTIMATE, I'M NOT ASKING WHO, BECAUSE
YOU HAVE LOTS OF DECISIONS TO MAKE, BUT I DO NEED -- AND THEN
YOU CAN LET ME KNOW WHEN WE CAN NEXT HAVE AN EFFECTIVE JURY
INSTRUCTION CONFERENCE, BECAUSE THERE'S REALLY A LOT OF WORK
STILL TO BE DONE.

        I'M CERTAINLY NOT ANGLING FOR IT THIS WEEK, OR EVEN THE
FIRST HALF OF NEXT WEEK, BUT THEN AT THAT POINT I WOULD WANT TO
LOOK AT, PERHAPS, LATE THURSDAY AFTERNOON, THE 17TH, IF
THAT'S -- BUT IT HAS TO BE PRODUCTIVE.

694

05:01:36   1          SO KEEP THAT IN MIND, AND I WILL ASK ABOUT IT AGAIN NEXT

05:01:39   2      WEEK.

05:01:40   3                 MS. POLLACK:  THANK YOU, YOUR HONOR.

05:01:40   4                 THE COURT:  ALL RIGHT.  ANYTHING ELSE?

05:01:42   5          ALL RIGHT.  THEN I WILL SEE YOU ALL ON FRIDAY MORNING.

05:01:44   6      THANK YOU.

05:01:55   7                 (THE PROCEEDINGS WERE CONCLUDED AT 5:01 P.M.)

           8

           9

          10

          11

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 5/9/18